**In the Matter of Lee SCARFONE, d/b/a Architect Lee Scarfone Associates and Patricia C. Scarfone, Debtors.**

**Lee Letterio SCARFONE, d/b/a Architect Lee Scarfone Associates, Plaintiff,**

v.

**ARABIAN AMERICAN OIL COMPANY, Defendant.**

**Bankruptcy No. 88–3800–8B7. Adv. No. 88–256.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 26, 1991.

Frederick Lowe, Tampa, Fla., for plaintiff.

Keith Fendrick, Douglas McClurg, Tampa, Fla., for defendant.

**ORDER GRANTING ARAMCO'S MOTION FOR SUMMARY JUDGMENT AND DENYING SCARFONE'S MOTION FOR SUMMARY JUDGMENT**

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THE MATTERS under consideration are Motions for Summary Judgment filed by Defendant, Arabian American Oil Company (Aramco), and Debtor/Plaintiff, Lee Letterio Scarfone (Scarfone). Both parties have alleged no genuine issues of material fact exist and the only issues remaining for the Court to decide are matters of law.

Aramco sued Scarfone in the U.S. District Court for the Middle District of Florida alleging Scarfone was liable to Aramco under (1) the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961–1968), (2) the Florida Anti–Fencing Act (Fla.Stat. §§ 812.005–.16), (3) the Florida RICO (Racketeer Influenced and Corrupt Organization) Act (Fla.Stat. §§ 895.-01–.09), and (4) the laws of the Kingdom of Saudi Arabia. Just prior to the commencement of the trial, Scarfone filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C.). Shortly after the filing of the petition, Scarfone's attorney in the District Court action was granted permission to withdraw as counsel for Scarfone. Aramco immediately sought relief from the automatic stay to allow the trial to continue as scheduled. This Court granted relief from the stay and allowed the trial to proceed to the point of entry of a final judgment. Scarfone requested a continuance of the trial because he was no longer represented by an attorney, but his request was denied, and he proceeded to trial *pro se.*[1]

The trial proceeded in District Court as scheduled and lasted for six and one-half days. At the conclusion of the trial, both parties submitted jury instructions at the court's request. The jury returned a unanimous verdict in favor of Aramco on all counts and awarded Aramco a judgment in the amount of $11,033,655.00.[2]

The standard of proof under which the jury was required to consider the evidence was preponderance of the evidence. The jury's verdict, rendered in a special interrogatory form, addressed each element of each count of the lawsuit in detail.

On July 21, 1988, Scarfone filed a complaint in this Court seeking to determine the $11,033,655.00 judgment is a discharge-able debt in his bankruptcy case. Aramco filed an answer and counterclaim alleging the debt owed by Scarfone is nondischargeable under Section 523(a)(2), (4), and (6) of the Bankruptcy Code.

Aramco now moves for summary judgment on the basis that there is no genuine dispute as to any material fact and Aramco is entitled to judgment as a matter of law. Specifically, Aramco alleges:

1. The issues involved in determining whether the $11,033,655.00 judgment is a dischargeable debt are identical to those issues litigated in the District Court between the parties.

2. The elements proven in the District Court action are identical to the elements necessary to be proven to determine a debt is nondischargeable under Section 523(a)(2), (4), or (6) of the Bankruptcy Code.

3. Scarfone should be estopped from relitigating in this Court the same factual and legal issues which were previously litigated in the District Court.

Scarfone also moves for summary judgment alleging that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. Scarfone asserts the only issues for the Court to resolve are:

1. Whether Aramco has standing as a creditor in the bankruptcy case.

2. Whether Aramco waived its defense of collateral estoppel.

### SCARFONE'S MOTION FOR SUMMARY JUDGMENT

█ With respect to the issue of whether Aramco is a creditor in the bankruptcy case, the Court finds Aramco is a creditor by virtue of its judgment obtained in the

---

1. The U.S. District Court's ruling on Scarfone's motion for continuance sheds more light on why Scarfone ended up proceeding in the trial *pro se.* That decision has been affirmed (*Arabian American Oil Co. v. Scarfone,* 939 F.2d 1472 (11th Cir.1991)) and need not be discussed herein.

2. On Scarfone's Motion for Judgment Notwithstanding the Verdict, the District Court reduced the judgment to $3,677,885.00. Subsequent to this reduction, additional post-judgment motions were filed which resulted in the District Court reinstating its original $11,033,655.00 judgment. The controversy centered around whether Aramco was entitled to treble damages under the Florida RICO Act. The District Court ultimately decided affirmatively.

District Court action. Scarfone's position that Aramco is not a creditor is based on the premise Aramco was not the entity actually harmed or damaged by Scarfone's fraudulent actions. Rather, the Saudi Arabian government was the entity actually harmed because it reimbursed Aramco for every penny Aramco paid Scarfone during the course of their business relationship. Therefore, the Saudi Arabian government, not Aramco, is the proper party to the Section 523(a) action. Since Scarfone is the one who instituted this adversary proceeding naming Aramco as Defendant, his argument is disingenuous at best. At all events, the issue of Aramco's or the Kingdom of Saudi Arabia's status has been resolved in favor of Aramco. *Arabian American Oil Co. v. Scarfone*, 939 F.2d 1472 (11th Cir.1991).

The District Court judgment in favor of Aramco comes to this Court, at a minimum, within the doctrine of full faith and credit. 28 U.S.C. § 1738. Since this Court is an integral part of the District Court, that court's judgment may even be deemed the law of the case on all matters other than dischargeability. *Sunco Sales, Inc. v. Latch (In re Latch)*, 820 F.2d 1163 (11th Cir.1987). The Bankruptcy Court does not act as an appellate court to determine the validity of the District Court's judgment. Such a question is for the U.S. Court of Appeals for the Eleventh Circuit which has rendered an opinion on most of the issues raised by Scarfone herein. *Arabian American Oil Co. v. Scarfone*, 939 F.2d at 1472. By the issuance of the final judgment, Aramco is a creditor within the meaning of the Bankruptcy Code.

■ As to Scarfone's allegation Aramco waived its defense of collateral estoppel, the Court finds no such waiver. Scarfone has provided no support for the allegation the defense was waived nor for the proposition the doctrine of collateral estoppel can be waived. The Court will not make a finding based on mere allegation. There-

**3.** The entire jury verdict and the District Court's instructions to the jury have been made part of

fore, Scarfone's Motion for Summary Judgment is denied.

## ARAMCO'S MOTION FOR SUMMARY JUDGMENT

■ Aramco argues Scarfone should be collaterally estopped from relitigating in this Court the same case he lost in the District Court. The Court of Appeals for the Eleventh Circuit has held the doctrine of collateral estoppel precludes a party from relitigating an issue if the following criteria are met:

1. the issue at stake must be identical to the one involved in the prior litigation;

2. the issue must have been actually litigated in the prior litigation;

3. the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action; and

4. the standard of proof in the prior litigation must have been at least as stringent as the standard of proof in the later litigation.

*See Hoskins v. Yanks (In re Yanks)*, 931 F.2d 42, 43 n. 1 (11th Cir.1991); *Halpern v. First Georgia Bank (In re Halpern)*, 810 F.2d 1061, 1064 (11th Cir.1987); *Miller v. Held (In re Held)*, 734 F.2d 628, 629 (11th Cir.1984); *Deweese v. Town of Palm Beach*, 688 F.2d 731, 733 (11th Cir.1982).

The special interrogatory jury verdict form conclusively establishes the elements of the charges in the District Court coincide with those delineated in Section 523(a)(2), (4) and (6). For example, to obtain a determination of nondischargeability pursuant to Section 523(a)(2)(A), Aramco must establish Scarfone obtained money by false pretenses, false representations, or actual fraud. The jury in the District Court answered "yes" when asked whether Scarfone was liable for "... knowingly obtaining or endeavoring to obtain the money or property of ARAMCO by means of false pretenses, fraud and deception ..." [3]

the record in this bankruptcy case.

Under Section 523(a)(4), a debt created by an act of larceny is nondischargeable. The jury in the District Court found Scarfone specifically liable for "knowingly obtaining or endeavoring to obtain the money or property of ARAMCO by means of false pretenses, fraud and deception in violation of the Florida civil theft statute."

Section 523(a)(6) precludes discharge of a debt which was created by the debtor's willful and malicious injury to another entity or the property of another entity. The terms willful and malicious have been held to mean intentional and in conscious disregard of another's rights. *See Lee v. Ikner (In re Ikner)*, 883 F.2d 986 (11th Cir. 1989); *Hardwick v. Petsch (In re Petsch)*, 82 B.R. 605, 607 (Bankr.M.D.Fla.1988); *People's Savings Bank v. Cardillo (In re Cardillo)*, 39 B.R. 548 (Bankr.D.Mass. 1984). Again, the jury's finding that Scarfone knowingly obtained money or property from Aramco in violation of the Florida Civil Theft Statute coincides with the elements necessary to prove nondischargeability under Section 523(a)(6). The Court of Appeals for the Eleventh Circuit has held a District Court's finding of a violation of the Florida Civil Theft Statute conclusively establishes the elements required to be proven under Section 523(a)(6), *i.e.*, willful and malicious injury by debtor to another's property. *In re Latch*, 820 F.2d at 1163. Therefore, this Court finds the issues and elements required to prove the nondischargeability of a debt under Sections 523(a)(2), (4) and (6) are identical to those issues and elements litigated in the District Court.

It is apparent from the record the second and third elements necessary to apply collateral estoppel have also been met. The issues were actually litigated before a jury in a trial that lasted six and one-half days and the issues previously litigated in the District Court action are an integral part of the dischargeability action.

Pivotal to the collateral estoppel question is the issue of what standard of proof is required by this Court to determine a debt nondischargeable under Section 523(a)(2), (4) and (6). As stated above, the District Court's standard of proof for fraud actions is preponderance of the evidence. Subsequent to the filing of the instant adversary proceeding, the Supreme Court determined the standard of proof in adversary proceedings under Section 523 is preponderance of evidence. *Grogan v. Garner*, — U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Yanks*, 931 F.2d at 42; *Melnick v. Seifert (In re Seifert)*, 130 B.R. 607 (Bankr M.D.Fla.1991). The Supreme Court did not articulate whether *Grogan* would be applied retroactively, but the Eleventh Circuit, without explicitly holding, did apply *Grogan* retroactively in *In re Yanks*. Assuming *Grogan* does apply retroactively, the standard of proof in this Court is identical to the standard of proof in the prior District Court litigation, and thus Scarfone is collaterally estopped from relitigating in this Court the same factual and legal issues which were previously litigated in the District Court.

Prior to the Supreme Court's decision in *Grogan*, the federal Courts of Appeals had been divided on the appropriate standard of proof in a Section 523(a)(2), (4) or (6) nondischargeability action. The Eleventh Circuit had held the proper standard to prove fraud under a Section 523(a)(2), (4) or (6) action is clear and convincing. *See In re Ikner*, 883 F.2d at 986; *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir. 1988); and *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986).[4] If *Grogan* does not apply retroactively, then the standard of proof required by this Court, *i.e.*, clear and convincing, is more stringent than the standard required by the District Court, and Scarfone would not be estopped from relitigating his case in this Court under the more stringent standard of proof. *Chang v. Daniels (In re Daniels)*, 91 B.R. 981 (Bankr.M.D.Fla.1988).

The Court now considers whether it must undertake the onerous task of actually re-

---

**4.** *But see In re Latch*, 820 F.2d at 1163, where, without a discussion of the standard of proof, the Eleventh Circuit held that a district court finding of willful and malicious was binding on the bankruptcy court (as noted in *In re Ikner*, 883 F.2d at 990 n. 4).

litigating the entire case in this forum or whether it may consider the District Court trial record as well as other documents filed in support of the Motion for Summary Judgment to make its findings in this case. The concern is whether this Court can glean from the trial record whether evidence establishing the existence of fraud is clear and convincing or a mere preponderance. Other courts confronting this issue have decided making use of the prior trial record is correct. *See In re Ikner*, 883 F.2d at 986; *Stearns & Co. v. Powell (In re Powell)*, 95 B.R. 236 (Bankr.S.D.Fla.), *aff'd*, 108 B.R. 343 (S.D.Fla.1989), *aff'd*, 914 F.2d 268 (11th Cir.1990).

It should be noted more than the trial record is before this Court. Scarfone has submitted depositions and other records in support of his position. This Court will consider all evidence submitted which is consistent with a ruling on a motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). This Court would reject any evidence which was not admitted in the District Court. To accept such material would be inconsistent with the doctrine of collateral estoppel and once again place this Court in a position of second guessing the trial court's rulings.

The facts as adduced from the trial record and other records submitted by Scarfone establish Scarfone contracted with Aramco to provide architectural design services in connection with the construction of public schools in Saudi Arabia. Under a principal contract, Scarfone was authorized to submit bids on projects Aramco was to award. As a result of the bidding process, Scarfone was awarded several projects during the relevant time period. The method Aramco used to award projects was by means of a document referred to as a "service order."

The mechanism used to compensate Scarfone for his services is somewhat in dispute and is crucial to both parties' positions regarding whether Scarfone did, in fact, commit fraud on Aramco. Aramco asserts Scarfone was compensated under an "allowable cost" mechanism, whereby Scarfone would submit a detailed invoice package which listed each employee by nationality and job classification and included time sheets signed by the employee indicating the total number of hours worked each day. The compensation under "allowable cost" method was based on the following factors: (1) job classification of the employee; (2) education and work experience; (3) social burden cost, *i.e.*, cost of providing food, housing, and other mandatory benefits (nationality was a factor in determining this cost); (4) profit factor; and (5) overhead cost. The invoice package was then submitted to Aramco for review and approval. During the relevant time period, Scarfone submitted over 130 invoices totalling in excess of eleven million dollars.

At trial, Aramco presented evidence which, under Aramco's theory of computing compensation, proved Scarfone overbilled Aramco in excess of three million dollars for his design services. Aramco also presented evidence which would suggest the overbilling was done intentionally with the intent to defraud Aramco. Evidence was introduced to the jury to show how Scarfone accomplished the overbilling.

Robert Work, a former assistant to Scarfone in Saudi Arabia, testified about how the overbilling was accomplished. According to Work, Scarfone would first make a determination of how much money was necessary to make each month. Based on this figure, Work would then set out to back into the numbers needed on the invoice to result in the magical number Scarfone had previously determined. Work arrived at the figures needed by using fictitious or former employees' names and inflated numbers of hours worked. To support these numbers, Work instructed another employee to prepare false time sheets covering the same time period as the invoice.

Other former employees of Scarfone also testified about the preparation of time sheets. Three employees specifically iden-

tified time sheets they had personally prepared as accurate records of the hours they worked and for which they were paid. However, these time sheets did not coincide with the hours invoiced to Aramco. Two individuals testified they never worked for Scarfone, yet their names and signatures of their names appeared on time sheets submitted to Aramco. Another group of former employees of Scarfone testified they did not work for Scarfone during the time periods for which time sheets bearing their names were submitted to Aramco.

In addition to the evidence submitted regarding allegedly false invoices with inflated hours, Aramco also put on evidence to establish Scarfone submitted invoices seeking inflated rates of pay. As discussed earlier, job classification, education, and nationality all have bearing on the rate of pay for which Scarfone could invoice Aramco. The evidence Aramco put on sought to prove a houseboy, a driver, and a bookkeeper were classified for purposes of invoicing Aramco as a professional, a draftsman, and a cost engineer respectively. Other evidence was introduced to establish Scarfone's attempts to cover up the alleged fraudulent invoicing practices.

As noted earlier, crucial to the determination of whether Scarfone committed fraud on Aramco is a determination of the method under which Scarfone was to be compensated for his design services. Scarfone alleges the actual method under which he was to be compensated was an "allowable cost/not to exceed" contract. Under the "allowable cost/not to exceed" method, Scarfone was to be compensated in progress payments which could not exceed the percentage of work completed and had a definite upper limit.

Scarfone's defense to the overbilling practices is based on his assertions the practices were customary and done with the knowledge and acceptance of Aramco. The gist of Scarfone's defense is each project had an upper limit on the amount of money budgeted to that particular project. If the budget was exceeded on one project, the overrun would be charged against another project whose budget had not yet been exceeded. Under this explanation, there would be no overbilling, rather only a misallocation of billing to respective projects. Scarfone asserts this practice of invoicing was done with the knowledge of Aramco and no efforts were ever made to conceal this method from Aramco.

This Court finds the elements of the doctrine of collateral estoppel have been met by Aramco. Viewing the record in the trial court and the jury verdict and judgment, which has been affirmed by the Eleventh Circuit, Scarfone's acts, as found by a jury, meet the standard of clear and convincing evidence. If the lesser standard applies under *Grogan*, most assuredly Aramco's Motion for Summary Judgment should be granted.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Scarfone's Motion for Summary Judgment is denied. It is further

ORDERED, ADJUDGED AND DECREED that Aramco's Motion for Summary Judgment is granted and the indebtedness to Aramco established by the judgment of the U.S. District Court for the Middle District of Florida is nondischargeable pursuant to 11 U.S.C. § 523(a). It is further

ORDERED, ADJUDGED AND DECREED that Aramco shall submit a proposed final judgment within twenty (20) days to be considered by this Court.

DONE AND ORDERED.