In re The CELOTEX CORPORATION,
et al., Debtors.

The CELOTEX CORPORATION,
et al., Plaintiffs,

v.

AIU INSURANCE COMPANY,
et al., Defendants.

Bankruptcy Nos. 90–10016–
8B1, 90–10017–8B1.
Adv. No. 91–40.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 21, 1996.

Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, for Debtors.

Charles P. Schropp, William R. Daniel, Schropp, Buell & Elligett, P.A., Tampa, FL, Deborah A. Swindells, Karen L. Bush, Nicholas J. Zoogman, Anderson, Kill, Olick & Oshinsky, Washington, DC, Stephen A. Madva, Montgomery McCracken Walker & Rhoads, Philadelphia, PA, Bruce Bishop, Willcox & Savage, Norfolk, VA, for Plaintiffs.

George N. Wood, Vice President and General Counsel, The Celotex Corporation, Tampa, FL.

Sara Kistler, Assistant United States Trustee, Tampa, FL.

John W. Kozyak, Kozyak Tropin Throckmorton & Humphreys, P.A., Miami, FL, for Asbestos Property Damage Claimants Committee.

Charles M. Tatelbaum, Johnson, Blakely, Pope, Boker, Ruppel & Burns, P.A., Clearwater, FL, for Unsecured Trade Creditors Committee.

William Knight Zewadski, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, for Unofficial Asbestos Health Claim Co–Defendants Committee.

H.C. Goplerud, Honigman Miller Schwartz and Cohn, Tampa, FL, for Asbestos Health Claimants Committee.

Sheldon S. Toll, Honigman Miller Schwartz & Cohn, Detroit, MI, for Asbestos Health Claimants Committee.

Daniel C. Sauls, John Flyger, Steptoe & Johnson Company, Washington, DC, for Highlands Insurance Co. and Old Republic Insurance Company.

Robert J. Bates, Jr., Maryann C. Hayes, Stanley V. Figura, Bates Meckler Bugler & Tilson, Chicago, IL, for Eric Reinsurance Company.

Deborah M. Paris, Paris & Associates, Tampa, FL, for Certain Underwriters at Lloyd's of London (Plaisted).

John A. Yanchunis, Blasingame Forizs & Smiljanich, St. Petersburg, FL, for Transportation Insurance Company, Continental Casualty Company, Columbia Casualty Company, Eric Reinsurance Company and Zurich American Insurance Company.

David C. McLauchlan, Andrew Kochanowski, Lord Bissell & Brook, Chicago, IL, for Certain Underwriters at Lloyd's of London.

Thomas B. Keegan, Robins, Kaplan, Miller & Ciresi, Chicago, IL, for Employers Mutual Casualty Company.

William Clearly, Mendes & Mount, New York City, for Barrett and London Market Companies.

Gregory J. Willis, Bart Billbrough, Walton Lantaff Schroeder & Carson, Miami, FL, for Florida Insurance Guaranty Association, Inc.

W. Gray Dunlap, Jr., Tampa, FL, for Hartford Accident and Indemnity Company, First State Insurance Company and Twin City Fire Insurance Company.

Rolph Gilbertson, Zeele & Larson, Minneapolis, MN, for Employers Insurance of WAUSAU.

Margaret Jones, Grippo & Eldon, Chicago, IL, for American Insurance Company and National Surety Corporation.

Thomas B. Mimms, Jr., MacFarlane Ferguson, Tampa, FL, for American Home Assurance Company, AIU Insurance Company, Highlands Insurance Company, Old Republic Insurance Company, Granite State Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA., Employers Mutual Casualty Company, American Insurance Company, National Surety Company and St. Paul Surplus Lines Insurance Company.

Christine A. Nykiel, Jackson & Cambell, Washington, DC, for American Home Assurance Company, AIU Insurance Company, Granite State Insurance Company, Lexington Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA.

Elizabeth G. Repaal, Harris Barrett, Mann & Dew, Tampa, FL, for Northbrook, as successor in interest to Allstate Insurance Company.

Mary A. Lau, Lau Lane Pieper Conley & McCreadie, P.A., Tampa, FL, for Employers Insurance Company of WAUSAU.

Elizabeth B. Sandza, Cynthia T. Andreason, LeBoeuf Lamb Greene & MaCrae, Washington, DC, for Hudson Insurance Company and Gibraltar Casualty Company.

William S. Daskam, IV, Butler Burnette & Pappas, Tampa, FL, for Continental Insurance Company.

Rick Dalan, Clearwater, FL, for Royal Indemnity Company.

Jeffrey A. Aman, Aman & Lins, Tampa, FL, for Insurance Company of North America and California Union Insurance Company.

## ORDER ON MOTION FOR SUMMARY JUDGMENT ON THE COLLATERAL ESTOPPEL EFFECT OF McCRORY'S ALTERNATIVE DISPUTE RESOLUTION

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

### I. INTRODUCTION

THIS CAUSE came on for consideration upon Motion for Summary Judgment by Defendant Plaisted London Market. This Court has considered all arguments and evidence, including the entire record for this case, consistent with a ruling on a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) (holding the standard of proof in summary judgment rulings is the same as it would be at trial); *Celotex v. Catrett*, 477 U.S. 317, 323–35, 106 S.Ct. 2548, 2552–59, 91 L.Ed.2d 265 (1986) (discussing the appropriate burdens of proof and types of evidence to use in summary judgment decisions); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986) (detailing the elements of summary judgment analysis). Finding no genuine issues of material fact remain, this Court

grants Defendant's Motion and states the following as grounds for this ruling.

### II. THE WELLINGTON AGREEMENT AND THE ARBITRATION DECISION

#### A. The Wellington Agreement

The Wellington Agreement (Wellington), represents efforts by parties involved in complex asbestos-related litigation to simplify the resolution of bodily injury claims. Agreement Concerning Asbestos–Related Claims (a.k.a. Wellington Agreement) at p. 1 (June 19, 1985); *see also North River Insurance Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1200–01 (3rd Cir.1995) (detailing the history and purpose of the Wellington Agreement). Debtor/Plaintiff, The Celotex Corporation, and Defendant, Plaisted London Market, are signatories of Wellington. The parties' original dispute arose concerning coverage of Philip Carey Manufacturing Company and P.C. Company, as predecessors to Debtor, under certain policies issued by the Defendant covering McCrory Corporation. The parties entered arbitration of their original dispute under the terms of Wellington.

#### B. The Arbitration Decision

The arbitrator, the Honorable Domenick L. Gabrielli, entered a decision on October 24, 1990 in favor of Defendant. Judge Gabrielli's opinion sets out the parties' arguments in detail, concluding the Debtor's insurance coverage claims under the four policies are denied. Celotex Corporation and Carey Canada, Inc. v. London Insurers, slip op. at 19 (N.Y. Oct. 24, 1990) (Gabrielli, Arb.)[1] The opinion gives detailed reasoning leading to the conclusion the Debtor was never intended as a named insured under the four policies at issue. *Id.* at 4, 7–9, 13, 15–16, 18–19.

#### C. Arbitration and Alternative Dispute Resolution

Alternative Dispute Resolution (ADR) has gained a foothold in the Federal dispute

---

1. A copy of the decision is available in the file for this Adversary Proceeding at Memorandum in Support of Plaisted London Market Defendants'

Motion for Summary Judgment that Debtors are Barred from Relitigating Issues Concerning the "McCrory Stores Policies," at Exh. A.

resolution system.[2] Enactment of 9 U.S.C. sections 1–14, the Federal Arbitration Act, represents the United States Congress' recognition of the need to acknowledge and administer arbitral awards.[3] The Restatement of Judgments, Second sections 83–84 address the effect and limitations of arbitral awards.[4] Arbitration under Wellington is subject to elaborate rules and regulations established by all the signatories to the agreement, and all parties are represented by counsel. *See* Agreement, app. C. Binding arbitration under Wellington culminates in a written opinion and judgment by the arbitral trial judge. *Id.,* at app. C, para. 10.B; Celotex, slip op., at pp. 1, 19 (Gabrielli, Arb.).

The Federal Arbitration Act provides a party may, upon agreement of the parties involved, have a federal court confirm an arbitration award. *See* 9 U.S.C. section 9. Analysis of the effect of confirming an arbitration award is distinct from an issue preclusion analysis. The scope of confirming an award under 9 U.S.C. section 9 is much narrower.

 Confirmation of an arbitration award does not examine the underlying arbitration process, but is available simply upon the appropriate request of a party where the parties agreed to allow a judgment based on the award. *See id.; cf. Jih v. Long & Foster Real Estate, Inc.,* 800 F.Supp. 312, 316–17

**2.** *See generally,* 6 William L. Norton, Jr., Norton Bankruptcy Law and Practice 2d, sections 146–147 (1994) (discussing alternative dispute resolution and arbitration respectively within the federal court context).

**3.** *See* Act July 30, 1947, 61 Stat. 669 (codified as amended at 9 U.S.C. sections 1–14 (1988 & supp. V 1995)).

**4.** Restatement (Second) of Judgments sections 83–84 (1982).

[Section] 84. Arbitration Award
(1) Except as stated in Subsections (2), (3), and (4), a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.
(2) An award by arbitration with respect to a claim does not preclude relitigation of the same or a related claim based on the same transaction if a scheme of remedies permits assertion of the second claim notwithstanding the award regarding the first claim.
(3) A determination of an issue in arbitration does not preclude relitigation of that issue if:
(a) According preclusive effect to determination of the issue would be incompatible with a legal policy or contractual provision that the tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question, or with a purpose of the arbitration agreement that the arbitration be specially expeditious; or
(b) The procedure leading to the award lacked the elements of adjudicatory procedure prescribed in [section] 83(2).
(4) If the terms of an agreement to arbitrate limit the binding effect of the award in another adjudication or arbitration proceeding, the extent to which the award has conclusive effect is determined in accordance with that limitation.
Restatement (Second) of Judgments section 84 (1982).

The *Restatement* discusses issue preclusion and arbitration awards specifically in Comment 3. *Id.* at cmt. c, illus. 3–4.
The relevant portion of section 83 reads as follows:
[Section] 83. Adjudicative Determination by Administrative Tribunal
. . . .
(2) An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including:
(a) Adequate notice to persons who are to be bound by the adjudication, as stated in [section] 2;
(b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;
(c) A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;
(d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered, and
(e) Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.
*Id.* at section 83(2) (1982).
Arbitration of disputes under the Wellington Agreement is a very detailed process providing for notice, discovery, organized trial, written opinions of binding decisions, and an elaborate appeals process. *See* Agreement, at app. C. The parties are represented by counsel.

(D.Md.) (1992) (discussing the narrow review when vacating or denying confirmation of an arbitration award under the Federal Arbitration Act). The limited judicial review of the substance of the arbitration award means confirmation of the award should be strictly limited to the scope given the original arbitration process. In this case the scope of the arbitration was set by Wellington which concerns bodily injury claims, therefore, confirming the award would apply only to the named insured issue in bodily injury claims, not property damage claims. This Court finds an issue preclusion analysis is not similarly limited.

Issue preclusion analysis allows the Court to review the the substance, the reasoning, and the record in the arbitral decision. *Cf. Scarfone v. Arabian American Oil Co. (In re Scarfone)*, 132 B.R. 470, 473–474 (Bankr. M.D.Fla.1991) (holding court may consider all evidence admitted in the prior proceeding as well as evidence appropriate on summary judgment when deciding issue preclusive effect of prior adjudication). Once the review is complete, there may be preclusive ramifications beyond the bodily injury coverage arbitrated under Wellington. *See Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir.1985) (looking beyond the arbitration decision to the process afforded the parties). In this circumstance, issue preclusion effect may be broader than the effect of confirmation under 9 U.S.C. section 9.

### III. ISSUE PRECLUSION AND ARBITRATION AWARDS

#### A. General Case Law

■ The United States Supreme Court, as recently as 1984, took a limited view toward giving preclusive effect to an arbitration decision. *See McDonald v. City of West Branch, Michigan*, 466 U.S. 284, 289–92, 104 S.Ct. 1799, 1802–04, 80 L.Ed.2d 302 (1984). In discussing the Court's approach to limiting the issue or claim preclusion effect of arbitral awards in certain cases, the *McDonald* Court makes clear "that Congress intended the statutes at issue in those cases to be judicial-

ly enforceable and that arbitration could not provide an adequate substitute for judicial proceedings in adjudicating claims under those statutes." *Id.* at 289, 104 S.Ct. at 1802. The claims discussed by the *McDonald* Court include a Title VII civil rights claim, *id.* at 288–89, 104 S.Ct. at 1801–03 (discussing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)), and a minimum wage claim, *id.* at 289, 104 S.Ct. at 1802–03 (discussing *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)). The *McDonald* case involved a claim for wrongful discharge under 42 U.S.C. section 1983. *Id.* at 286, 290, 104 S.Ct. at 1800–01, 1803.

The following year, the United States Supreme Court addressed the enforceability of agreements to arbitrate in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985). In the *Byrd* case, the Court held "agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement." *Id.* at 218, 105 S.Ct. at 1241 (interpreting the Federal Arbitration Act, 9 U.S.C. section 2 to require a Federal District Court to compel arbitration where the parties signed an agreement to arbitrate). The *Byrd* Court did not reach the question of the preclusive effect of the arbitral award, but the Court did state:

> We believe that the preclusive effect of arbitration proceedings is significantly less well settled than the lower court opinions might suggest....
>
> ....
>
> Significantly, McDonald [sic] also establishes that courts may directly and effectively protect federal interests by determining the preclusive effect to be given to an arbitration proceeding.
>
> ....
>
> Suffice it to say that in framing preclusion rules in this context, courts shall take into account the federal interests warranting protection.

*Id.* at 222–223, 105 S.Ct. at 1243–44.[5]

This Court finds the instant case presents no special federal interest to protect. Unlike

---

**5.** *See generally* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice

the cases discussed in *McDonald,*[6] the facts of this case do not involve giving preclusive effect to an arbitration award in a later case involving a claim of significant federal interest. As signatories of Wellington, the parties agreed to put certain issues before an arbitrating judge. The resulting arbitration decision finds the Debtor is not a named insured on four insurance policies.

The Debtor fails to establish any new or significantly different evidence which could be offered to this Court on the named insured issue. The inapplicability, if any, of the Wellington arbitral process to property damage claims does not alter this issue. There is no purpose served by relitigating whether the Debtor is a named insured under the policy.

### B. United States Court of Appeals for the Eleventh Circuit

#### 1. Arbitral Awards

■ The United States Court of Appeals for the Eleventh Circuit recently considered arbitral awards in *Lifecare International, Inc. v. CD Medical,* 68 F.3d 429 (11th Cir.1995). The *Lifecare* decision reiterates a very high standard for Federal Courts when vacating an arbitral award—a nonstatutory arbitral decision should be vacated only if the decision is arbitrary and capricious. *Id.* at

435. The arbitrary and capricious standard requires there be no grounds whatsoever for the arbitration decision. *Id.* Further, the arbitration award is presumed correct and an error of law or interpretation is not sufficient to justify overturning the award. *Id.* (citing *Sullivan, Long & Hagerty, Inc. v. Local 559,* 980 F.2d 1424, 1427 (11th Cir.1993)). The standards adopted by the Eleventh Circuit evidence a very high regard for arbitral awards. This Court finds the arbitral decision in the instant case similarly deserving of confidence. *See Celotex,* slip op. at 1–19 (Gabrielli, Arb.).

#### 2. Issue Preclusion and Arbitral Awards

In *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352 (11th Cir.1985), the Eleventh Circuit applied issue preclusion doctrine to an arbitral award, stating:

> When an arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings, just as determinations of a court would be treated.

*Id.* at 1360.

The *Greenblatt* Court distinguished its facts from those discussed by the United States

---

and Procedure section 4475, at 770–72 (1981 & Supp.1996) (discussing the preclusive effects of arbitration awards).

**6.** The *McDonald* Court states "... although arbitration is well suited to resolving contractual disputes, our decisions in *Barrentine* and *Gardner–Denver* compel the conclusion that it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that section 1983 is designed to safeguard." *McDonald,* 466 U.S. at 290, 104 S.Ct. at 1803. The Court elaborates, setting out four limitations inherent in arbitration: (1) "... an arbitrator's expertise 'pertains primarily to the law of the shop, not the law of the land.'" *id.* (quoting *Gardner–Denver,* 415 U.S. at 57, 94 S.Ct. at 1024); (2) "an arbitrator's authority derives solely from the contract," *id.,* so the arbitrator may be required to enforce the contract over the public law; (3) where the arbitration stems from labor union controlled arbitration, the individual's rights and the union's concerns may not coincide; and (4) the rights of the parties in arbitration to a complete record, detailed fact finding, and procedures usually available in civil trial may be severely limited or

nonexistent. *Id.* at 290–92, 104 S.Ct. at 1803–04. None of these concerns are at issue in the instant case. There is no subsequent claim under a different law or theory, so concerns (1) and (2) do not arise. The individual parties represented themselves in a unique process under Wellington, so concern (3) does not arise. Finally, the due process, thorough record, and detailed fact finding of the binding arbitration decision under Wellington is more than sufficient to meet concern (4).

This Court further must acknowledge the strong public policy favoring arbitration. *See Rodriguez de Quijas v. Shearson/American Express, Inc.* 490 U.S. 477, 480–81, 109 S.Ct. 1917, 1919–20, 104 L.Ed.2d 526 (1989) (discussing the evolution of the Court's strong support for arbitration); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 231–33, 107 S.Ct. 2332, 2340–41, 96 L.Ed.2d 185 (addressing the historical concerns raised about arbitration and reiterating the Court's support for arbitration); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (noting the strong federal policy favoring arbitration).

Supreme Court in *Byrd* and *McDonald.* The *Greenblatt* Court concluded, based on the arbitration panel's determination, the plaintiff could not establish the predicate acts necessary for a Racketeer Influenced and Corrupt Organizations (RICO) claim, thus summary judgment was appropriate. *Id.* at 1361. The Court stated: "the nature of the RICO claim asserted and the procedural adequacy of the arbitration proceeding persuades us that the factual findings necessary to support the arbitration award should be given collateral estoppel effect in the present judicial proceeding." *Id.*[7] The *Greenblatt* court interprets the *McDonald* and *Byrd* cases to

> "indicate a case-by-case approach to determining the [issue preclusive] effects of arbitration on federal claims, focusing on the federal interests in insuring a federal court determination of the federal claim, the expertise of the arbitrator and his scope of authority under the arbitration agreement, and the procedural adequacy of the arbitration proceeding."

*Id.*

In accordance with the Eleventh Circuit's criteria, this Court finds it appropriate to apply the doctrine of issue preclusion to the arbitral decision in the instant case. No federal claim is implicated here, only a determination of the parties rights under a contract of insurance. Therefore, it is appropriate to analyze the arbitral decision under the traditional doctrine of issue preclusion.

7. In an unreported case, *Delmay v. Paine Webber,* No. 87–8703, 1988 WL 167737 at *4, n. 5 (11th Cir. Dec. 28, 1988) *reh'g granted and order vacated,* 872 F.2d 356 (11th Cir.1989), the Eleventh Circuit discussed arbitral awards having less preclusive effects because "arbitrators often give no written reasons for their decisions and indeed are discouraged from doing so to prevent litigation on the validity of their awards." *Id.* The Court continued, "[t]his court has declined to afford preclusive effect to an arbitral award when the reasoning of the arbitrator was insufficiently explicit to allow us to determine whether an issue was actually litigated or necessarily decided in the arbitration." *Id.* This Court finds these concerns do not arise in the instant case. Judge Gabrielli's 19 page opinion specifically addresses the issue of whether the Debtor is a

## C. The *Restatement of Judgments, Second*

The *Restatement of Judgments, Second* sections 83–84 discuss the effect and limitations of arbitral awards.[8] The Debtor argues the *Restatement* supports relitigation of the named insured issue. Section 84(4) states as follows:

> (4) If the terms of an agreement to arbitrate limit the binding effect of the award in another adjudication or arbitration proceeding, the extent to which the award has conclusive effect is determined in accordance with that limitation.

Restatement (Second) of Judgments section 84(4) (1982).

The Eleventh Circuit's reasoning in *Greenblatt,* 763 F.2d at 1361–62, supports precluding relitigation of the named insured issue in this case.

The *Greenblatt* case involved an arbitration panel decision of a claim by a stock broker against a client. *Id.* at 1355. No special findings of fact were made by the arbitration panel. *Id.* at 1361. The *Greenblatt* court inferred findings of fact consistent with the panel's ultimate determination, reasoning the panel could not have determined as it did if certain facts were not present. *Id.* Once these facts were inferred, the *Greenblatt* court considered them binding when determining whether the client, plaintiff in the *Greenblatt* case, could prove the predicate acts required under a RICO claim. *Id.* at 1362. The preclusive effect was given despite the fact the RICO claim was never before the arbitration panel.[9]

named insured on the four policies at issue and his reasoning for determining the Debtor is not covered. *See* Celotex, slip op. at 1–19 (Gabrielli, Arb.).

8. Restatement (Second) of Judgments sections 83–84 (1982); *supra* note 3 and accompanying text.

9. The RICO claim was among several claims the client asserted were non-arbitrable federal claims. *Greenblatt,* 763 F.2d at 1355. The arbitration was governed by the New York Stock Exchange. *Id.* The *Greenblatt* court did not decide the open question of whether RICO claims are non-arbitrable federal claims in this circuit. *See id.* at 1361.

The *Greenblatt* court reasoned so long as the same issues were "directly within the scope of the contractual arbitration clause and the arbitrators' expertise," *id.* at 1361, issue preclusive effect could be given to the panel's decision.[10] In this case, Judge Gabrielli determined the same single issue the Debtor wishes to raise before this Court— whether the Debtor was a named insured under the policy in question.

This Court finds the named insured issue is central to coverage under the policy, under Wellington and in this adversary proceeding. Once the named insured issue was determined, it need not be revisited. *See id.* at 1361–62. The parties established an elaborate adjudicatory system in the Wellington Agreement. It would be ludicrous to hold that the arbitration system allowed insureds and insurers to adjudicate claims, but not whether there was insurance coverage. Any conflict between this reasoning and the Restatement must be resolved in favor of following Eleventh Circuit precedent. Therefore, the Court rejects the Debtor's characterization of Section 84 and the Restatement in general that preclusive effect should not be accorded to a determination of the named insured issue under the policy.

## IV. ISSUE PRECLUSION ANALYSIS OF THE WELLINGTON McCRORY'S ARBITRATION DECISION

 The United States Supreme Court and the United States Court of Appeals for the Eleventh Circuit precedent, as well as the *Restatement,* acknowledge arbitral awards may have preclusive effect. Thus, the remaining analysis examines whether the Wellington arbitration award meets the standards of federal issue preclusion doctrine. The doctrine requires courts to recognize prior adjudication of specific issues by other courts. *See Chang v. Daniels (In re Daniels),* 91 B.R. 981, 982 (Bankr.M.D.Fla.1988). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *see also McDonald,* 466 U.S. at 287 at n. 5, 104 S.Ct. at 1801 at n. 5 (quoting the same passage from the *Allen* opinion). Federal law requires the following four elements to invoke issue preclusion:

(1) the issue at stake must be identical to the one decided in the prior action;

(2) the issue must have been actually litigated in the prior proceeding;

(3) the prior determination of the issue must have been a critical and necessary part of the earlier decision; and

(4) the standard of proof in the current action must not be significantly more stringent than the standard in the prior action.

*Bush v. Balfour Beatty Bahamas (In re Bush),* 62 F.3d 1319, 1322 (11th Cir.1995). *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 379–386, 105 S.Ct. 1327, 1331–35, 84 L.Ed.2d 274 (1985);[11]

---

**10.** The Comment to the *Restatement* offers similar views on issue preclusion and arbitral awards, stating:

 When arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings, the award should have the same effect on issues necessarily determined as a judgment has. Economies of time and effort are thereby achieved for the prevailing party and for the tribunal in which the issue subsequently arises.

 Restatement (Second) of Judgments section 84 cmt. c, illus. 3 (1982). The arbitration in this case is "substantially similar in form and scope to a judicial proceeding[] . . .", *id.*

**11.** The Supreme Court in *Marrese* sets out the analysis federal courts must use when determining the preclusive effect of a state court judgment. *Marrese,* 470 U.S. at 379–386, 105 S.Ct. at 1331–35. Under *Marrese,* the federal court looks first to the nature of the state court proceeding and decides if it is a type of judgment or determination the state law would recognize as having a preclusive effect. *See id.* at 381–383, 105 S.Ct. at 1332–33. Once the federal court determines the judgment may have preclusive effect, the court evaluates the individual judgment to determine whether to give it preclusive effect. *See id.* at 386, 105 S.Ct. at 1334–35. Similarly, this Court determines whether arbitration awards may be given preclusive effect under federal law, then turns to federal issue preclusion analysis to decide whether to give preclusive effect. *See also Molldrem v. Wagner (In re Wagner),* 79 B.R. 1016, 1019–20 & n. 3 (Bankr.W.D.Wis. 1987) (noting the distinction between analyzing a state versus a federal judgment under the principles of *Marrese* ).

*Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980) (discussing collateral estoppel in general).

The first prong under the doctrine requires an analysis as to issue identity. The issue Defendants seek to not to relitigate is whether the Debtor is a named insured on four insurance policies issued from April 1, 1967 to April 1, 1970. Celotex, slip op. at 2 (Gabrielli, Arb.). This issue was expressly decided by Judge Gabrielli, *id.* at 18–19, and is raised directly by Defendants Motion for Summary Judgment. While the coverage submitted to arbitration under Wellington concerned bodily injury claims, the named insured issue reaches beyond merely determining bodily injury coverage. If the Defendant successfully established no coverage is available to Debtor under the policies, no coverage exists for bodily injury *or* property damage claims. Thus, the issues are identical as to coverage.

The second prong of issue preclusion doctrine requires the issue to be actually litigated in the previous determination. The issue was fully litigated before Judge Gabrielli, as is evidenced by his detailed written opinion. The parties had a full opportunity to present evidence and to be heard on all arguments relevant to whether the Debtor is entitled to coverage under the four policies. Thus, the issue was actually litigated.

The third prong required by issue preclusion doctrine is the earlier determined issue must be a critical and necessary part of the earlier judgment. In this case, the named insured issue is central to whether or not coverage existed for Philip Carey, and subsequently the Debtor, under these policies. Few issues could be more critical or necessary to deciding insurance coverage than whether an entity is even a named insured on the policies. Thus, the issue was critical and necessary to the earlier judgment.

■■ Finally, under the fourth prong, the standard of proof required in the prior action must not be significantly lower than the standard in the current action. *See Bush,* 62 F.3d at 1322. The standard of proof for civil litigation between private litigants in the Federal court system is generally by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). Neither party raised any issues concerning the standard of proof in the arbitration, and Judge Gabrielli's decision does not set out a specific standard.[12] This Court concludes, based on Judge Gabrielli's written report and the argument of the parties, no significant difference arises in the standard of proof for the case at hand and the standard used in arbitration.

## V. CONCLUSION

This Court finds it appropriate to afford preclusive effect to Judge Gabrielli's finding the Debtor is not a named insured. Therefore, the Debtor is barred from relitigating the named insured issue as to both bodily injury and property damage coverage. Accordingly, it is

ORDERED, ADJUDGED AND DECREED the Court grants the Defendant's Motion for Summary Judgment and finds the arbitration decision at Celotex, slip op. at 1–19 (Gabrielli, Arb.) binding on the parties on the issue of whether the Debtor is a named insured on the four policies in question.

**DONE AND ORDERED.**

---

**12.** The Wellington Agreement elects the "applicable common law of the states of the United States." Wellington, at section XXII, para. 2. However, the parties did not raise any issues concerning a differing standard of proof. Therefore, this court presumes the arbitration standard is at least equivalent to the typical preponderance of the evidence standard for civil litigation. Further, this Court notes the extensive discussion and reasoning in Judge Gabrielli's written opinion, and finds it supports the conclusion the standard in the prior action is not significantly lower than a the preponderance of the evidence required here. The Court also notes Judge Gabrielli found the Debtor had the burden of proof, and completely failed to meet the burden, on the issue of whether the Defendants were ever given adequate notice of the intent to include Philip Carey as a named insured on the policies at issue. Celotex, slip op. at 19 (Gabrielli, Arb.).