ARABIAN AMERICAN OIL COMPANY, a Delaware Corporation, Plaintiff–Counter–Defendant, Appellee,

v.

Lee Letterio SCARFONE, individually, Architect Lee Scarfone Associates, Defendants–Counter–Plaintiffs, Appellants,

Robert Work, Jerry Konidaris, Defendants.

No. 90–3279.

United States Court of Appeals, Eleventh Circuit.

Aug. 30, 1991.

Edna L. Caruso, Philip Burlington, West Palm Beach, Fla., for defendants-counter-plaintiffs-appellants.

Holland & Knight, Steven L. Brannock, Tampa, Fla., for plaintiff-counter-defendant-appellee.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and HILL, Senior Circuit Judge.

PER CURIAM:

This case stems from alleged fraud in the performance of services contracts in Saudi Arabia. The Arabian American Oil Company ("Aramco") sued Lee Scarfone and his proprietorship, Architect Lee Scarfone Associates, alleging breach of contract, fraud, violations of federal and Florida racketeering statutes, and violation of the Florida civil theft statute.[1] Scarfone counterclaimed against Aramco, alleging violations of federal and Florida racketeering statutes, malicious extortion, and breach of contract. The jury found in favor of Aramco on all claims, and against Scarfone on his counterclaims. Scarfone appeals the denial of certain discovery requests, the denial of his motion for a continuance despite the discharge of his attorney, the post-judgment ratification of the verdict by the Kingdom of Saudi Arabia (the "Kingdom"), and Aramco's employment of other claims besides the contract claim. We affirm.

## I. FACTUAL & PROCEDURAL HISTORY

Aramco is a Delaware corporation principally based in Dhahran, Saudi Arabia. The company was formed in the 1930's by a consortium of American oil companies to acquire oil and gas concessions from the Kingdom. In the early 1980's, Saudi Ara-

---

**1.** For convenience, Architect Lee Scarfone Associates and Lee Scarfone will be referred to together as "Scarfone."

bia acquired beneficial ownership of most of Aramco's rights, assets, and facilities. Aramco retains legal title to the assets relating to the exploration, mining, and production of oil, and is charged with managing those assets for the benefit of the Kingdom. Aramco receives a fee for this service.

In the 1970's, the Kingdom began an effort at industrialization and modernization, using Aramco as the principal instrument to carry out those plans. Aramco's duties included overseeing the development and construction of roads, housing, schools, hospitals, and entire townships. Aramco qualified the designers and contractors, entertained bids, assigned projects, and supervised construction. Aramco also paid the contractors, but was reimbursed by the Kingdom.

Pursuant to Aramco's standard procedure, Aramco and Scarfone entered into a series of annual "blanket" agreements for architectural services. These agreements did not award work on specific projects, but covered such areas as dispute resolution, compensation, work standards, and payment procedures. Separate cost-plus contracts were signed awarding work on the specific projects. These contracts required Scarfone to account for the actual time and actual employees working on a specific project, so that Scarfone would be compensated for the expenses associated with employing each individual plus be guaranteed a profit. After finishing work on a project, Scarfone would submit an invoice package to Aramco. Each package would contain a roster of Scarfone's employees, listing each employee's nationality[2] and job classification. The package would also contain signed timesheets for each employee showing the number of hours worked on each project. Scarfone worked on more than 60 projects from 1978 to 1983, for which Aramco paid Scarfone over $12 million. The Kingdom reimbursed Aramco for all of the payments made to Scarfone.

This lawsuit arose because Aramco believed that Scarfone had overcharged it by billing for time not spent, billing foreign workers at higher nationality rates, and billing for nonexistent employees. Aramco sued Scarfone for breach of contract, fraud, civil theft,[3] and violations of the Florida and federal Racketeer Influenced and Corrupt Organizations ("RICO") acts.[4] The district court found the evidence of this scheme "overwhelming," observing: "There was direct evidence by former [Scarfone] employees about fraudulent billing, a plethora of documents showing discrepancies between the employees' actual weekly time sheets and the monthly summations forwarded by [Scarfone] to Aramco as part of its invoices, as well as eyewitnesses to Scarfone's forging of documents." R12–339–3.

During discovery, Scarfone sought certain documents relating to the relationship between Aramco and the Kingdom.[5] Scar-

2. Aramco's allowable hourly rate differed for persons of different nationality.

3. Fla.Stat.Ann. § 812.014 (West Supp.1991) provides in part:
    (1) A person is guilty of theft if he knowingly obtains or uses, or endeavors 'to obtain or to use, the property of another with intent to ...:
    (a) Deprive the other person of a right to the property or a benefit therefrom.
    (b) Appropriate the property to his own use or to the use of any person not entitled thereto.
    Florida law provides a civil remedy for theft for treble damages. This provision was formerly codified at section 812.035(7), but is now codified at Fla.Stat.Ann. § 772.11 (West Supp.1991) ("Any person who proves ... that he has been injured ... by reason of any violation of the provisions of ss. 812.012–812.037 has a cause of action for threefold the actual damages sustained.")

4. The Florida RICO statute is codified at Fla. Stat.Ann. §§ 895.01–895.06 (West Supp.1991). The federal RICO statute is codified at 18 U.S.C. §§ 1961–1968 (1988 & Supp. I 1989). 18 U.S.C. § 1964(c) provides that "[a]ny person injured ... by reason of a [racketeering] violation ... shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." Former Fla.Stat.Ann. § 895.05(7), applicable to this law suit, tracked the federal treble damage provision.

5. Request Number 6 sought:
    All records, documents, memorandums, and correspondence concerning the transfer of ARAMCO assets or stock ownership to the

fone had two bases for requesting these documents: (1) the Saudi Arabian government had taken over complete control of Aramco's operation and thus was the real party in interest; and (2) the documents were relevant to Aramco's claims that Scarfone's designs were substandard. R5-115-11. After Aramco amended its complaint to delete the allegations of substandard design, Scarfone argued that the documents were still necessary to establish that Aramco was not damaged. R6-128-7. The Magistrate concluded:

> Because the Plaintiff has now dropped its substandard design claim the only potential relevance of materials reflect-

> Saudi Arabian government, its agents or citizens, including but not limited to, any agreements between ARAMCO, the directors of ARAMCO, and the Saudi Arabian government concerning said ownership and the disposition of any contractual arrangements with ARAMCO as the result of any such ownership by the Saudi Arabian government or its agents. This shall include all documents or contracts between the Defendant Scarfone and ARAMCO that were affected by any agreements between ARAMCO and the Saudi Arabian government.
>
> R3-74-7.
>
> Request Number 7 sought:
>
> All records, documents, correspondence, and memorandums concerning the disposition of debts, obligations, and assets of ARAMCO to the Saudi Arabian government, or its agents, as the result of the transfer of stock ownership to the Saudi Arabian government, its agents or citizens, of any ARAMCO debt, obligation or asset, including all documents concerning agreement by ARAMCO to contract building of projects and the hiring of contractors. This shall include all records, documents and memorandums concerning how, in what manner, the basis for the billing of said projects and the cost of said projects between ARAMCO and the Saudi Arabian government, and whether the Saudi Arabian government accepted the projects without adjustments in design and specifications during the MATERIAL TIME PERIOD.
>
> R3-74-7.
>
> Request Number 60 sought:
>
> Copies of all Agreements between the Consortium of United States Corporations that were the original shareholders and owners of the Arabian American Oil Company (ARAMCO), a Delaware corporation, and the Kingdom of Saudi Arabia, its agents or royal representatives, or members of the royal family that were in effect on the date the MATERIAL TIME PERIOD begins.

ing the Plaintiff's relationship with the Saudi Arabian Government would be concerning the Defendants' claim that the Plaintiff is not the real party in interest in this case. This argument was rejected.

R8-175-1-2. Because the relationship between Aramco and the Kingdom had "no relevance to any issue in this law suit," the magistrate denied the motion to compel as to request numbers 6, 7, 60, and 61.[6] *Id.* at 2.

Prior to trial, Scarfone had several lawyers, each of whom began representation after the preceding one withdrew. On the eve of the April, 1988, summary jury trial,[7]

> R3-69-16.
>
> Request Number 61 sought:
>
> Copies of all Agreements executed during the MATERIAL TIME PERIOD that deleted from, added to, or otherwise changed those Agreements (Paragraph 60, Supra.) as they existed at the beginning of the MATERIAL TIME PERIOD.
>
> R3-69-16.
>
> Request Number 62 sought:
>
> Copies of all edicts, rulings or orders from the Kingdom of Saudi Arabia, its agents or royal representatives, or members of the royal family that were issued to ARAMCO during the MATERIAL TIME PERIOD.
>
> R3-69-16.
>
> Request Number 63 sought:
>
> All decisions and directives of the Council of Ministers applicable to contractors working for ARAMCO during the MATERIAL TIME PERIOD. This shall include any and all memorandums and correspondence between the Saudi Arabian government and ARAMCO concerning violations of decisions and directives of the Council of Ministers of the Saudi Arabian government concerning ALSA, Lee Scarfone and any of the employees and persons directly or indirectly related to ALSA or Lee Scarfone.
>
> R3-69-16.

6. Apparently, the magistrate previously denied Request Numbers 62 and 63 in his June 13, 1986, order on Scarfone's Motion to Compel. The magistrate determined that "the Plaintiff need not disclose orders, edicts, rulings or directives issued by the Saudi Arabian government or the Saudi royal family to ARAMCO." R5-115-12.

7. A summary jury trial is a non-binding proceeding that encourages settlement. The trial usually lasts less than a full day (although the one in this case lasted into a third day). Generally, six jurors are chosen after a brief voir dire

Scarfone's latest attorney, Patrick Mirk, filed a motion to withdraw. The district judge refused to grant the motion, and Mr. Mirk served as counsel during that trial. Shortly after the summary jury trial, Mr. Mirk filed a renewed motion for leave to withdraw, and a motion to stay proceedings in the case was also filed. On June 2, the district judge denied the motion to withdraw and the motion to stay the proceedings, stating in part:

> Defendant Scarfone has had four different counsel of record, Mr. Mirk being the last attorney to file a notice of appearance. On previous occasions motions to withdraw as counsel have been filed on the eve of taking depositions, in an apparent attempt to delay proceedings in this cause.
>
> .    .    .    .    .
>
> The Court finds it would be an unconscionable delay in the progress of this case to grant the motion for stay of proceedings.

*Arabian Am. Oil Co. v. Scarfone,* 685 F.Supp. 1220, 1221 (M.D.Fla.1988).

In late June, 1988, Mr. Mirk again filed a motion for leave to withdraw. Although indicating at a hearing that he was inclined to deny the motion, the trial judge (who entered the case at this point to sit by designation) entered a written order two days prior to trial granting Mr. Mirk's motion to withdraw. The trial judge also denied Scarfone's motion for a continuance. According to the judge:

> Scarfone has not paid [Mirk] accrued fees as agreed upon by him; he has refused to cooperate with or assist said counsel in responding to discovery requests by other parties; Scarfone has refused to advance funds for the taking of necessary discovery; and, finally, Scarfone has stated, and the Court finds,

that he does not want Mirk to represent him further. . . .

> Accordingly, the Court finds that it would be unconscionable to deny Mirk's motion and that a failure to grant the same would amount to involuntary servitude. . . .
>
> The Court finds further that Scarfone has other staff counsel who are in a position to represent him in the trial presently scheduled and that any prejudice to him is of his own making. Accordingly, for this and the reasons previously stated, the motion by Scarfone for a continuance is DENIED.

R11–312–1–2. In disposing of post-trial motions, the trial judge further elaborated on his reasons for granting Mirk's motion and denying the continuance: "Mirk's motion was granted and Scarfone's motion for a continuance was denied, due in part to the Court's determination that Scarfone's dispute with his attorney was yet another tactic by Scarfone to delay the trial of the action. Supporting this belief was the inconsistency between Scarfone's offer to settle the case for $500,000 in cash juxtaposed against his failure to pay his attorney and finance pretrial investigation due to alleged insolvency." R12–339–5.

On the eve of trial, Scarfone filed a petition in bankruptcy. The bankruptcy judge, however, granted Aramco relief from the automatic stay provisions of 11 U.S.C. § 362 (1988) to proceed with the trial. At the close of trial, the jury was instructed, among other things:

> In this case, ARAMCO contends that it is an agent and fiduciary of the Kingdom of Saudi Arabia, for whom ARAMCO issued various building contracts. If you find that such a relationship existed, and the Kingdom of Saudi Arabia or ARAMCO suffered damages because of the actions of Mr. Scarfone, then ARAMCO

conducted by the court. Following short opening statements, the attorneys present the evidence to the jury. Live witnesses do not testify, and evidentiary and procedural rules are few and flexible. After the attorneys' presentations, the jury is given an abbreviated charge and is requested to return a unanimous verdict. If the jurors cannot reach a consensus, they are asked

to return a special verdict, listing individual perceptions of liability and damages. The special verdict affords counsel insights as to lay perceptions of the case and aids arriving at an equitable basis for settlement. Lambros, *The Summary Jury Trial, A Report to the Judicial Conference of the United States,* 103 F.R.D. 461, 483–84 (1984).

would be entitled to recover such damages.

R20–169. The jury returned a verdict in favor of Aramco on all of its claims and against Scarfone on all of his counterclaims. On each claim, the jury found Aramco's damages to be $3,677,885. R11–323. The district judge trebled the damages.[8]

Scarfone filed a motion for a judgment notwithstanding the verdict, which the district court granted as to Aramco's statutory claims. The court determined that under the federal and Florida RICO statutes, as well as the Florida civil theft statute, only the "person injured" could recover treble damages, and Aramco thus could not recover under those statutes for injuries sustained by the Kingdom. R12–339-13–14.[9] Subsequently, the court permitted Aramco to try obtaining the ratification of the verdict by the Kingdom, pursuant to Fed.R.Civ.P. 17(a).[10] Aramco acquired the ratification of the Kingdom, R12–358, and the court reinstated the treble damages verdict. The court later awarded attorneys' fees of $1,112,473.[11] This appeal followed.

## II. DISCUSSION

### A. *Post-judgment Ratification*

■ Scarfone first contends that the district court erred by permitting the Kingdom to ratify the judgment pursuant to Rule 17(a). Rule 17(a) permits a court to allow ratification by the real party in interest where an understandable mistake has been made. Fed.R.Civ.P. 17(a), notes of advisory committee on 1966 amendment. The defendant, however, must not be prejudiced by the ratification. *See Delta Coal Program v. Libman*, 743 F.2d 852, 857 n. 7

(1984). The function of this ratification rule "is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Fed.R. Civ.P. 17(a), notes of advisory committee on 1966 amendment. We review the district court's determination for abuse of discretion. *See Icon Group, Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 476 & n. 3 (3rd Cir.1987).

■ Appellant contends that the failure to join the Kingdom was not an understandable mistake. His primary basis for this contention is that he questioned Aramco's standing to bring the statutory claims in a motion to dismiss the original complaint 3½ years prior to trial and raised the real party in interest issue in a motion to dismiss the amended complaint 2½ years prior to trial. Appellee aptly points out, though, that the district court rejected appellant's motions to dismiss. It was not until after trial that the district court (with a different judge from the first ruling) determined that Aramco was not the real party in interest for purposes of the statutory claims. We conclude that it was understandable for appellee to have relied on the district court's initial ruling that it had standing and was the real party in interest.

■ Scarfone's argument that he was prejudiced by the ratification also fails. Scarfone first maintains that he was prejudiced by not being able to conduct discovery of the Kingdom's relationship with Aramco. Discovery rulings will not be disturbed unless the district court has abused its discretion and such abuse has resulted in substantial harm to the party seeking relief. *Edward Leasing Corp. v. Uhlig &*

---

8. See note 4 above for the statutory treble damage provisions.

9. As reviewed above, there was testimony at trial that the Kingdom had reimbursed Aramco for all payments Aramco made to Scarfone.

10. Fed.R.Civ.P. 17(a) provides in relevant part: No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for rat-

ification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

11. In awarding attorneys' fees, the court cited 18 U.S.C. § 1964(c). R13–390–4–5. For the text of that statute, see note 4 above.

*Assocs., Inc.,* 785 F.2d 877, 881 (11th Cir. 1986). If we conclude that the district court's discovery rulings should not be disturbed, we must conclude that the discovery rulings have not prejudiced appellant for the purposes of Rule 17(a) ratification.

As reviewed in section I, after Aramco had dropped the substandard design claim, Scarfone sought discovery to prove that Aramco was not damaged and thus was not the real party in interest.[12] Aramco, through the testimony of one of its employees, admitted at trial that the Kingdom had reimbursed Aramco for the entire amount paid to Scarfone. Aramco, through the affidavit of another employee, also admitted that it operates its assets and facilities for the benefit of the Kingdom. R5–121–2–3; R5–122–10–11. Under these circumstances, we conclude that based upon the showing made by appellant as to any need for the extensive discovery requested,[13] the district court did not abuse its discretion in limiting and denying this far-reaching discovery. Further, the denial of this discovery did not result in substantial harm to appellant. The discovery rulings thus did not prejudice appellant for Rule 17(a) purposes.

Appellant also contends that the ratification prejudiced him because it permitted the Kingdom to avoid potential liability on his counterclaims. We have discovered no attempt by appellant to join the Kingdom as a defendant of his counterclaims or to sue the Kingdom separately for the acts arising from his contract with Aramco. No court denied appellant the right to sue the Kingdom. Appellant has shown neither that the district court's ratification decision denied him the right to bring a claim against the Kingdom nor that any such claim would have had some chance of success. Under these circumstances, we conclude that the ratification did not prejudice appellant.

In sum, we conclude that the district court did not abuse its discretion in permitting the Kingdom to ratify the verdict.

### B. *Trebling of Damages*

Scarfone seeks to avoid the trebling of damages[14] by arguing that Aramco's sole remedy is damages for breach of contract. According to Scarfone, under Florida law where the same conduct forms the basis for a breach of contract claim and any tort claim and the compensatory damages for the claims are the same, a plaintiff can only recover for breach of contract. We need not determine whether Scarfone's contention concerning Florida law is correct because, in addition to the Florida state law claims, the jury also found that Scarfone had violated the federal RICO provisions, which permit treble damages.[15]

"The elements of, and the defenses to, a federal cause of action are defined by federal law." *Howlett v. Rose,* —— U.S. ——, 110 S.Ct. 2430, 2442, 110 L.Ed.2d 332 (1990). Scarfone has pointed to no federal case or statute prohibiting a plaintiff from bringing a RICO action where a breach of contract claim also exists. In fact, many RICO cases involve contract disputes. *See, e.g., Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3286 n. 16, 87 L.Ed.2d 346 (1987) (citing survey in which 38 of 132 published decisions surveyed involved commercial and contract disputes). As Justice Powell recognized in dissent in *Sedima,* the Supreme Court has concluded that such use of RICO is proper: "I write . . . to emphasize my disagreement with the Court's conclusion that the statute must be

---

**12.** On appeal, appellant also notes that the trial judge instructed the jury that if it found that a fiduciary relationship existed between Aramco and the Kingdom, Aramco could recover the Kingdom's damages. Appellant argues that he should have been able to obtain discovery on the fiduciary issue. This argument would have credence only if appellant had been trying to prove that a relationship did *not* exist between Aramco and the Kingdom. Appellant's basis for contending that Aramco was not damaged, how-

ever, was that a relationship *did* exist between Aramco and the Kingdom.

**13.** The discovery requests are reviewed in note 5 above.

**14.** For the statutory provisions allowing treble damages, see notes 3 and 4 above.

**15.** *See supra* note 4.

applied to authorize the types of private civil actions now being brought frequently against respected businesses to redress ordinary ... breach-of-contract cases." *Id.* at 3287 (Powell, J., dissenting).

### C. *The Withdrawal of Scarfone's Attorney*

 Appellant contends that the district court erred in denying his motion for a continuance after permitting his attorney to withdraw two days prior to trial. A lawyer's withdrawal does not afford a party an absolute right to a continuance. *Mekdeci v. Merrell Nat'l Laboratories,* 711 F.2d 1510, 1520 n. 12 (11th Cir.1983). Rather, the grant of a continuance is within the trial court's sound discretion. *Id.* at 1519.

"[T]he exercise of discretion by the trial court will be disturbed only in extreme cases in which it clearly appears that the moving party was free of negligence." *Grunewald v. Missouri Pacific R.R.,* 331 F.2d 983, 986 (8th Cir.1964) (quoting Annotation, *Withdrawal or discharge of counsel in civil case as ground for continuance,* 48 A.L.R.2d 1155, 1159 (1956)). Appellant engaged in an egregious pattern of dilatory tactics in this case.[16] We conclude that the district court did not abuse its discretion in denying the motion for a continuance.[17]

---

**16.** For a discussion of some of those tactics, see pages 7–10 above.

**17.** Appellant relies on two cases for the proposition that a litigant or an attorney is entitled to ample notice and time to prepare for trial: *Smith–Weik Mach. Corp. v. Murdock Mach. and Eng'g Co.,* 423 F.2d 842 (5th Cir.1970), and *Schooley v. Kennedy,* 712 F.2d 372 (8th Cir. 1973). *Smith–Weik* is inapposite; the court in that case merely created an exception to the trial court's discretion in denying continuances. In *Smith–Weik,* the court reversed the denial of a motion for a continuance because it determined that illness of counsel was an exception to the general rule regarding the district court's discretion in denying continuances. 423 F.2d at 845. In our case, appellant did not request a continuance because of illness of counsel, and we review the district court's determination for an abuse of discretion.

The language appellant cites from *Schooley* is equally inapposite. The Eighth Circuit in

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

*Schooley* stated that "[a] pro se litigant should receive meaningful notice of what is required of him but the court is not required or permitted to act as counsel for any party." 712 F.2d at 373. The court made this comment not in the context of determining whether the plaintiffs had enough notice of the trial date or time to prepare for trial, but in the context of whether the trial court had adequately notified the plaintiffs of the type of documents necessary to comply with the court's pretrial order. *Id.* at 373–74. Moreover, the Eighth Circuit's later discussion of the district court's denial of the plaintiffs' motion for a continuance supports the view that a litigant asserting a lack of ample time to prepare for trial must show that he has not negligently contributed to that lack of time. Determining that the plaintiffs' inability to secure counsel prior to the scheduled trial date was due to their lack of diligence, the Eighth Circuit found that the district court had not abused its discretion in denying the request for a continuance. *Id.* at 374.