**C.S.I.R. ENTERPRISES, INC., Plaintiff,**

v.

**SEBRITE AGENCY, INC., a corporation, David Huff, an individual, Sebrite Investment Corporation, a corporation, National Association of Truckers, Inc., a corporation, Bryan Kerwick, an individual, and Kerwick & Keesee, Inc., a corporation, Defendants.**

**No. 8:02–CV–438–T–17–TGW.**

United States District Court, M.D. Florida, Tampa Division.

July 9, 2002.

James M. Kaplan, Clifford L. Rostin, Wilson, Elser, Moskowitz, Edelman & Dicker, Miami, FL, for Plaintiff.

Robert Michael Daisley, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, Fl, for Sebrite Agency, Inc.

Lawrence Phillip Ingram, Jessica E. Kirkwood, Phelps, Dunbar LLP, Tampa, FL, for David Huff, Sebrite Investment Corp.

### ORDER ON DEFENDANTS' MOTION TO DISMISS

KOVACHEVICH, Chief Judge.

This cause comes before the Court on the following motions and responses:

1. Plaintiff, C.S.I.R. Enterprises, Inc. (hereafter CSIR)'s, complaint and demand for jury trial. (Dkt.1).

2. Defendants, David Huff (hereafter Huff) and Sebrite Investment Corporation (hereafter Sebrite Investment)'s, motion to dismiss Counts I–VI of the complaint (Dkt.3) and memorandum of law in support of motion to dismiss Counts I–VI. (Dkt.4).

3. Defendant, Sebrite Agency, Inc. (hereafter Sebrite Agency)'s, motion to dismiss Counts I–VI of the complaint (Dkt.9) and memorandum of law in support of motion to dismiss Counts I–VI. (Dkt.10).

4. Plaintiff, CSIR's, memorandum of law in opposition to Defendants, Huff and Sebrite Investment's and Sebrite Agency's, motion to dismiss. (Dkt.23).

## STANDARD OF REVIEW

A district court should not dismiss a complaint unless it appears, "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). To survive a motion to dismiss, a plaintiff may not merely "label" his or her claims. *See Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). At a minimum, the Federal Rules of Civil Procedure require a "short and plaint statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Conley*, 355 U.S. at 47, 78 S.Ct. 99 (quoting Fed.R.Civ.P. 8(a)(2)).

In deciding a motion to dismiss, the court may only examine the four corners of the complaint. *See Rickman v. Precisionaire, Inc.*, 902 F.Supp. 232, 233 (M.D.Fla.1995). "The threshold sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

In addition, a court must accept the plaintiff's well-pled facts as true and construe the complaint in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Howry v. Nisus, Inc.*, 910 F.Supp. 576 (M.D.Fla.1995). However, when on the basis of a dispositive issue of law, no construction of the factual allegations of the complaint will support the cause of action, dismissal of the complaint is appropriate. *See Executive 100, Inc. v. Martin County*, 922 F.2d 1536 (11th Cir. 1991).

## BACKGROUND

The following factual allegations, taken from the Plaintiff's complaint, are taken as true only for the purpose of the pending motions. The Plaintiff in this case, CSIR, is an insurance broker. CSIR's principal place of business is in New York, New York. The Defendant, Sebrite Agency, is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota. Sebrite Agency is authorized to do business in the state of Kentucky. Sebrite Investment is a Kentucky corporation with its principal place of business in Louisville, Kentucky. Huff, also a Defendant, is United States citizen who resides in Kentucky. Kerwick, a Defendant, is also a United States citizen, living in Florida. The Defendant, Kerwick & Keesee, is a Florida corporation with its principal place of business in Tampa, Florida.

Around the summer of 2001, CSIR was hired by Mystic Transportation, Inc. (Mystic) to obtain new insurance coverage for Mystic. Mystic is a New York corporation which transports goods in the northeastern United States. Mystic was a member of a risk retention group which provided commercial insurance coverage. This coverage was scheduled to expire on August 31, 2001. CSIR agents, Maureen Monahan (Monahan) and Judd Feinerman (Feinerman), met with Huff and another Sebrite Agency agent to develop a new insurance risk retention group. This new risk retention group was to be developed so that Mystic would not have a lapse in coverage.

CSIR alleges that Huff and Kerwick were agents of Sebrite Agency because Sebrite Agency provided them with letterheads, fax cover sheets, an email account, and a telephone system. Also, Huff and Kerwick were provided with business cards and a placard which had the "Sebrite Agency, Inc." logo on it. Furthermore, Huff was introduced to CSIR as an agent of Sebrite Agency. Huff informed CSIR that if he was unavailable then it could discuss any concerns with Kerwick, who

was also an agent of Sebrite Agency. Huff quickly advised CSIR that he could not develop the risk retention group before Mystic's coverage expired in August.

On Sebrite Agency's behalf, Huff and Kerwick told CSIR that a temporary insurance coverage could be arranged until the risk retention group could be developed. The temporary coverage was to be provided by Universal Insurance Exchange (Universal). Around August 31, 2001, Kerwick informed CSIR Universal would provide insurance for Mystic for the price of $1,303,824.00.

On August 31, 2001, Kerwick, through a fax, informed CSIR that it must deposit $100,000.00 into a Loss Fund Escrow Account. The fax stated that this account was to be replenished as needed. Kerwick also sent an email to CSIR, on that same day, with the same information. On September 6, 2001, after CSIR and Mystic had failed to make the deposit, Huff contacted CSIR and demanded payment or the insurance would not be issued.

Around the time of September 20, 2001, Feinerman, Monahan, and Frank DePrisco, Sr. (DePrisco), all agents of CSIR, traveled to Sebrite Agency's office in Louisville, Kentucky to meet with Kerwick and Huff. The purpose of this meeting was to secure the insurance coverage for Mystic. Feinerman, DePrisco, and Monahan were told by Huff and Kerwick that the $100,000.00 deposit was needed immediately in order to guarantee the insurance coverage for Mystic. On September 20, 2001, CSIR wired $100,000.00 to the Defendants bank account in Louisville, Kentucky. A few days later Kerwick notified CSIR that the Universal insurance policy had been secured. About two weeks later, Kerwick called CSIR and notified CSIR that Universal wanted another $100,000.00 deposit or the coverage would be terminated. Relying on Kerwick's advice, CSIR

wired another $100,000.00 deposit to the Defendants' bank account. CSIR then advised Mystic that an insurance policy had been secured. Mystic then attempted to make several claims under the new policy. When Mystic made these claims the Defendants informed Mystic that the policy had never been secured and Mystic's claims were rejected. CSIR then demanded that the Defendants return the deposits. The Defendants refused.

The Plaintiff's complaint alleges the following counts: 1) fraudulent misrepresentation against all Defendants, 2) conspiracy to commit conversion against Defendants, 3) negligent misrepresentation against Defendants, 4) violation of the Federal RICO Statute, 18 U.S.C.1962(c), 5) violation of the Federal RICO Statute, 18 U.S.C. 1962(a), and 6) violation of the Federal RICO Statute, 18 U.S.C.1962(d). The Plaintiff is requesting relief from all counts in the amount of $200,000.00 plus interest and attorneys' fees and costs. For Counts I and III the Plaintiff is also seeking punitive damages.

## DISCUSSION

The Defendants have asserted several arguments in support of their Motions to Dismiss and Memorandums of Law in support of their Motions to Dismiss. Each argument will be addressed separately. Likewise, the Plaintiff has asserted many arguments in opposition to the Defendants Motion to Dismiss.

### Failure to Plead Fraud and RICO Claims with Specificity

The first argument made by the Defendants is that the Plaintiff has failed to plead Counts I, IV, V, and VI with the required specificity. In their memorandums, the Defendants argue that the Plaintiff's claims for fraudulent misrepresentation have not been plead with the

required specificity. The Defendants also argue that the claims made by the Plaintiff under the RICO statute lack the required specificity. Each argument will be discussed independently.

*Failure to Plead Fraud with Specificity*

Rule 9(b), Federal Rules of Civil Procedure, states that in:

> "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." Fed.R.Civ.P.Rule 9(b).

Pleading fraud with greater specificity than is normally required by the federal rules is necessary in order to: 1) provide defendants with sufficient notice of what the plaintiff complains to enable them to frame a response, 2) prevent fishing expeditions to uncover unknown wrongs, and 3) protect the defendant from unfounded accusations of immoral or otherwise wrongful conduct. *Knight v. E.F. Hutton and Co., Inc.,* 750 F.Supp. 1109, 1114 (M.D.Fla. 1990).

■ This means that when a plaintiff alleges fraud the complaint must include: 1) the exact statements that were made and the documents or oral representations they were made in or what omissions were made, 2) the time and place of each statement and the individual who made the statement or omission, 3) the content of the statement and the way that it misled the plaintiff, and 4) what the defendants gained as a result of the fraud. *Brooks v. Blue Cross and Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1371 (11th Cir.1997).

Using the factors set forth in *Brooks* as guidance, this Court will now analyze whether the claims of fraudulent misrepresentation alleged in Count I of the Plaintiff's complaint are plead with the necessary specificity required under Rule 9(b). Under Count I, the Plaintiff refers to two fraudulent misrepresentations that were made. The first alleged misrepresentation, found in paragraph 33 of Plaintiff's complaint, states that through both a fax and email, the Defendant, Kerwick, represented to the Plaintiff that he could obtain an insurance policy for the Plaintiff, but that Plaintiff would have to deposit $100,000.00 into the Defendants' bank account in order to secure the policy. The Plaintiff alleges, also in paragraph 33, that the email and fax were sent on or about August 31, 2001. Also in paragraph 33, the Plaintiff alleges that the statement was made by Kerwick who is an agent of the Defendants. In paragraph 35, the Plaintiff claims that it relied on Kerwick's statement that he could obtain the policy for the Plaintiff and as a result of its reliance the Plaintiff wired $100,000.00 to the Defendants' bank account. The Plaintiff then asserts in paragraph 38, that the Defendant has not secured the policy or returned the money to the Plaintiff.

■ The Court finds that the allegations made by the Plaintiff in regards to this fraudulent misrepresentation are sufficient to meet the requirement of specificity. The Defendants argue, in their memorandums, that the Plaintiff has failed to properly plead the claims of fraudulent misrepresentation with specificity because the Plaintiff has failed to assert that the Defendants Sebrite Agency, Huff, or Sebrite Investment made a fraudulent statement and also because the Plaintiff has not alleged the time and/or place of the misrepresentation. The Plaintiff in its memorandum, argues, through a recitation of individual paragraphs of its complaint, that it has met the proper specificity requirements. The Court agrees with the Plaintiff. Here, the Plaintiff has properly asserted that the Defendants have made the

fraudulent misrepresentations. The Plaintiff has done this by alleging in paragraph 33 that Kerwick made the statements as an agent for the Defendants. The Plaintiff has alleged an agency relationship between Kerwick, Huff, and Sebrite Agency through paragraph 15. In this paragraph the Plaintiff alleges that Sebrite Agency provided Kerwick and Huff with office space in Louisville, Kentucky, fax cover sheets, email accounts, business cards, a telephone system, and an outside placard with Sebrite Agency's logo. Furthermore, in paragraph 21 of its complaint the Plaintiff alleges that on September 6, 2001, Huff made contact with the Plaintiff. During this contact, Huff advised the Plaintiff that it should pay the $100,000.00 to secure the insurance policy. Paragraph 23 also provides an example of Huff's involvement in that it alleges on September 20, 2001, Huff and Kerwick told representatives of the Plaintiff that the $100,000.00 deposit was necessary in order to secure the insurance policy. As to this first fraudulent misrepresentation, the Plaintiff has stated who made the statements as well as the time and place it was made, the contents of the statements, how it mislead the plaintiff, and the defendant's gain in making the statement.

The Plaintiff also refers to a second fraudulent statement made by the Defendants in Count I. In paragraph 36, the Plaintiff alleges that Kerwick called the Plaintiff and made the second misrepresentation. Referring back to paragraph 27, the Plaintiff alleges that during this conversation, Kerwick informed the Plaintiff that an additional deposit would be needed in order to secure the policy. Again, the amount of the deposit requested was $100,000.00. The Plaintiff, in paragraph 36, alleges that this phone call was made several weeks after August 31, 2001, by Kerwick as an agent of the Defendants. In paragraph 37, the Plaintiff then alleges

that it relied on Kerwick's statement and wired another $100,000.00 to the Defendants' bank account. In paragraph 38, the Plaintiff again asserts that the Defendants have not obtained the policy nor returned the money to the Plaintiff.

■ In considering the Defendants' and Plaintiff's arguments, the Court finds that this alleged misrepresentation does not carry the necessary specificity. In paragraph 36 of its complaint the Plaintiff alleges that the misrepresentation by the Defendants took place several weeks after the August 31, 2001, misrepresentation. However, referring back to paragraphs 25 through 27 of the Plaintiff's complaint, the Court finds that this misrepresentation is alleged to have occurred around two weeks after September 20, 2001. In paragraph 27 the Plaintiff alleges that after this second misrepresentation was made it wired the $100,000.00 deposit on October 5, 2001. This leads the Court to believe that the Defendants made the second misrepresentation sometime between late September or early October. However, the Plaintiff has failed to state in which month this alleged misrepresentation occurred. Therefore, this Court is in agreement with the Defendants as to this second misrepresentation. Accordingly, the Court finds that this second misrepresentation alleged by the Plaintiff is insufficient because it fails to plead fraudulent misrepresentation with the specificity required. The Court will allow the Plaintiff to the opportunity to plead with further specificity.

### Failure to Plead RICO Claims with Specificity

The Defendants argue that the RICO claims alleged by the Plaintiff in Counts IV–VI are not pled with the required particularity. The Defendants argue that the Plaintiff has failed to assert the "predicate

acts" necessary for a RICO claim. It concludes that because the Plaintiff has failed to plead the required particularity the Defendants have not been provided with the proper notice of the wrongful acts it allegedly committed. On the other hand, the Plaintiff argues that it has pleaded its RICO claims with particularity. The Plaintiff argues that it has asserted the "predicate acts" with specificity required.

■ This Court finds that the Plaintiff has failed to plead its RICO claims with the required specificity. This Court bases this conclusion on the fact that the Plaintiff has failed to establish the "predicate acts" necessary for a RICO cause of action. The Court's discussion of the Plaintiff's failure to establish the necessary "predicate acts" is found below.

### Failure to Allege a "Pattern of Racketeering Activity"

The Defendants further argue, in their memorandums, that the Plaintiff has failed to allege a "pattern of racketeering activity" in Counts IV–VI of its complaint. The Defendants point out that a Plaintiff must allege a "pattern of racketeering activity" in order to bring a cause of action under RICO. Each of these counts are brought under the RICO statute. The Defendants argue that in order for a "pattern of racketeering" to be established a Plaintiff must assert "predicate acts." The Defendants argue that the Plaintiff has not asserted any "predicate acts" within the complaint.

In *H.J. Inc. v. Northwestern Bell Telephone Co.*, the Supreme Court held that a plaintiff will establish a "pattern of racketeering activity" when it asserts that: 1) the defendant committed two or more predicate acts in a ten-year period, 2) those predicate acts are related to each other, and 3) the predicate acts illustrate continuous criminal conduct. 492 U.S. 229, 237–244, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Even though this Court has already held that the Plaintiff failed to properly establish the necessary "predicate acts," it is still important for this Court to discuss the other areas in which the Plaintiff's complaint fails to establish a "pattern of racketeering activity." Therefore, each of these elements that work together to make a "pattern of racketeering activity" will be discussed separately.

1) *The Defendants Committed Two or More "Predicate Acts" within a Ten–Year Time Span*

The Defendants assert that the Plaintiff has failed to allege the "predicate acts" needed in order to establish a "pattern of racketeering activity." It argues that the Plaintiff's complaint contains only conclusory allegations and not "predicate acts." The Plaintiff argues that it has properly alleged the "predicate acts" committed by the Defendants. In support of its argument that it has properly alleged "predicate acts" committed by the Defendants, the Plaintiff cites to *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir.1991). The Plaintiff argues that under this case the definition of a "predicate act" includes acts of mail and wire fraud. *Id.*

■ As mentioned above, "predicate acts" are when at least two acts of racketeering occur within a ten-year period of time. *H.J., Inc.* at 237, 109 S.Ct. 2893. The Eleventh Circuit has held that allegations of two or more "predicate acts" are sufficient to satisfy a "pattern of racketeering activity" even if the defendants performed the acts solely in the course of a single scheme. *Bank of America v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986). Under 18 U.S.C. § 1961, "predicate acts" are defined to include mail and wire fraud. The Plaintiff was correct in its memorandum when it cited to the Eleventh Circuit's decision in *Pelletier v.*

*Zweifel* which listed the elements of mail and wire fraud as when a person "1) intentionally participates in a scheme to defraud another of money or property and 2) uses the mails or wires in furtherance of that scheme." 921 F.2d at 1498. *Pelletier,* also states that when the alleged "predicate act" is mail or wire fraud, the plaintiff must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme. *Id.* at 1499–1500. Furthermore, the court in that case held that there must also be a showing "that the defendant held the requisite mens rea ... a 'conscious knowing intent to defraud.'" *Id.* at 1499.

However, the Eleventh Circuit has recently carried this a step further and set forth a total of nine elements a plaintiff must prove when the "predicate acts" involve mail or wire fraud. *Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1360–61 (11th Cir. 2002). After analyzing both *Pelletier* and the mail and wire fraud statutes, the *Sikes* court came up with the nine elements: "1) the defendant intentionally participated, 2) in a scheme to defraud, 3) the plaintiff of money or property, 4) by means of material misrepresentations, 5) using the mails or wires, 6) and that the plaintiff relied on a misrepresentation made in furtherance of the fraudulent scheme, 7) that such misrepresentation would have been relied upon by a reasonable person, 8) that the plaintiff suffered injury as a result of such reliance, and 9) that the plaintiff incurred a specifiable amount of damages." *Id.* at 1359–1361. In discussing many of these nine elements, the court referred back to its opinion in *Beck v. Prupis,* 162 F.3d 1090 (11th Cir.1998). *Id.*

■ Applying these nine elements recently set forth in *Sikes,* this Court finds that the Plaintiff has failed to allege the "predicate acts" needed in order to establish a "pattern of racketeering activity."

In discussing the first element, which requires the Plaintiff to prove that the Defendants "had intent" this Court finds that the Plaintiff properly alleges that the Defendants had the intent to carry out a scheme to defraud the Plaintiff of its money. The Defendants, in their memorandums, argue that the Plaintiff has failed to allege that Sebrite Agency, Huff, and Sebrite Investment committed any "predicate acts." This Court disagrees with the Defendants and determines that Plaintiff has sufficiently alleged that each Defendant committed the necessary predicate acts. In paragraph 51 of its Complaint the Plaintiff alleges that all the Defendants conspired together to execute the scheme to defraud the Plaintiff. There seems to be support in the Plaintiff's allegation that there was intent by all the Defendants. This support can be found in paragraph 60 of the Plaintiff's complaint. In this paragraph the Plaintiff alleged that the Defendants placed the funds it received from the scheme into a shell corporation, National Association of Truckers, Inc. (NAOT). This assertion by the Plaintiff offers proof to the Court that there is evidence of intent on part of all the Defendants to defraud the Plaintiff through making misrepresentations. Furthermore, this Court previously held, where the defendants argued a lack of fraudulent intent, that a defendant does not need to personally commit the acts as long as there is adequate evidence that connects the defendants to the scheme. *Spivey v. Board of Church Extension & Home Mission of the Church of God,* 1995 WL 350269, at *6 (M.D.Fla. June 8, 1995). Therefore, this Court finds that the Plaintiff has properly alleged the element of intent.

This Court will discuss the second and seventh elements together. These ele-

ments involve whether or not there was a scheme to defraud and that a misrepresentation made by the defendants would have been relied upon by a reasonable person. These elements will be analyzed together because in *Beck* these two elements are presented together. 162 F.3d at 1095. In *Beck*, the court defined a scheme or fraud to mean a situation in which a defendant intentionally made misrepresentations that would mislead a plaintiff of ordinary prudence and understanding. *Id.* The court went on to say that this meant that a plaintiff would have to establish that a reasonable person would have relied on the misrepresentations. *Id.* No where in its complaint does the Plaintiff assert that a reasonable person would have relied on the misrepresentations made by Kerwick on behalf of the other Defendants. Therefore, as to these two elements, it cannot be said that the Plaintiff has met the requirement of asserting the necessary "predicate acts."

Having said this, the Court will still analyze the remaining elements. The Plaintiff did meet the element that the Defendants used the mails or wires. In paragraphs 19 and 20 of its complaint, the Plaintiff alleges that Kerwick, on behalf of the Defendants, both emailed and faxed the Plaintiffs. The Plaintiff alleges that within this fax and email Kerwick made the misrepresentation that if the Plaintiff's deposited $100,000.00 that the insurance policy could be secured. Furthermore in paragraph 25, the Plaintiff asserts that it wired the $100,000.00 deposit to the Defendants' bank account. In paragraph 27, the Plaintiff alleges that Kerwick, again on behalf of the Defendants, called the Plaintiff and requested an additional $100,000.00 to be deposited in order to secure the policy. In that same paragraph, the Plaintiff asserts that it wired another $100,000.00 to the Defendants' bank account. Therefore, this Court finds that

the Plaintiff has met the fifth element of using the mails or wires.

The Court will also discuss elements three and four together. The Plaintiff has alleged that there was some type of effort by the Defendants to defraud the Plaintiff of money through making misrepresentations. In paragraph 54 of the Complaint, the Plaintiff again points to the fax and email sent by the Defendants on behalf of Kerwick. Both the email and fax represented to the Plaintiff that the insurance policy would be secured if it deposited money in the Defendants' bank account; there are sufficient allegations that this was a misrepresentation. In paragraph 55, the Plaintiff asserts that it was through the misrepresentations made by the Defendants that the Plaintiff wired a total of $200,000.00 to the Defendant's bank account. Therefore, the Plaintiff has sufficiently alleged that the Defendants made misrepresentations to the Plaintiff in order to obtain the Plaintiff's money.

This Court also finds that the Plaintiff relied on the Defendant's misrepresentations. In paragraph 25, the Plaintiff clearly states that it was the misrepresentation made by Huff and Kerwick, on behalf of all the Defendants, in paragraph 23, that caused the Plaintiff to rely on those misrepresentations and wire $100,000.00 to the Defendants' bank account. In paragraph 27, the Plaintiff again asserts its reliance on the misrepresentations by the Defendants which caused the Plaintiff to wire the second $100,000.00 deposit to the Defendant's bank account. Paragraph 28 also asserts that the Plaintiff relied on the Defendants' misrepresentations. In this paragraph, the Plaintiff asserts that because it relied on the Defendants' misrepresentations it advised Mystic that the insurance policy had been secured.

The Court also finds that the Plaintiff suffered injury as a result of its reliance on the Defendants' misrepresentations. In *Beck,* the court determined that a plaintiff's injury must be caused by the racketeering activity. 162 F.3d at 1095. Taking into consideration the previous paragraphs discussed from Plaintiff's complaint along with paragraphs 58, 60, and 62 this Court finds that the Plaintiff has appropriately asserted that the injury was as a result of the Defendant's misrepresentations. In paragraphs 58, 60, and 62, the Plaintiff alleges that its injury is a result of the Defendant's racketeering activity. These paragraphs, read together with the previously discussed paragraphs involving the alleged misrepresentations made by the Defendants, allege that the Plaintiff's injury was caused by the Defendants' racketeering activity.

Therefore, this Court finds that the Plaintiff has failed to sufficiently allege all the facts that are necessary in order for this Court to find the two "predicate acts" required. Only these two elements are fatal to the Plaintiff's attempt to allege that the Defendants committed the "predicate acts."

### 2) The "Predicate Acts" Must Be Related to One Another

The next factor that needs to be analyzed to determine if there is a "pattern of racketeering activity" is whether there is a relationship between the "predicate acts." *H.J., Inc.,* 492 U.S. at 240, 109 S.Ct. 2893. In *H.J., Inc.,* the Supreme Court discussed that in order to form a pattern there needed to be more than a number of "predicate acts." 492 U.S. at 238, 109 S.Ct. 2893. The Court found that it was not the amount of "predicate acts" committed but instead their relationship to each other. *Id.* In the present case neither party discusses whether there is a relationship between the "predicate acts" committed,

however this Court feels it is important to discuss all the elements that the Supreme Court has found to comprise a "pattern of racketeering activity."

The Supreme Court determined that there were certain factors to look at in order to ascertain whether or not "predicate acts" are related. *Id.* at 240, 109 S.Ct. 2893. The factors given by the Court were whether the acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.*

In the present case, it is clear that if the "predicate acts" were sufficiently pled then the Court could find a relationship. The "predicate acts" committed by the Defendants were for a common purpose. This common purpose was to defraud the Plaintiff of at least $200,000.00. Each "predicate act" had the same result. Each act resulted in the Defendants obtaining $100,000.00 from the Plaintiff. The participants were the same. Both Huff and Kerwick as agents of Sebrite Agency made false representations to the Plaintiff in order to obtain the $100,000.00. The sole victim in this scheme was the Plaintiff, CSIR. Therefore, this Court finds that the alleged "predicate acts" would be related if found to be valid.

### 3) The "Predicate Acts" Must Demonstrate a Continuing Nature of Criminal Conduct

Having discussed the first two requirements that are necessary to prove a "pattern of racketeering activity," this Court must discuss whether the alleged "predicate acts" would "amount to or otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc.,* 492 U.S. at 240, 109 S.Ct. 2893. The Supreme Court has ruled that it is the "*continuity plus relationship*" that forms a "pattern of

racketeering activity." *Id.* at 239, 109 S.Ct. 2893. Therefore, even though neither party has discussed this factor in their memorandums this Court feels that it is important to analyze it.

The Supreme Court has found that there are two types of continuity that can form a "pattern of racketeering activity." The first is "closed-ended continuity." "Closed-ended continuity" is when a defendant commits "related predicate acts" during a closed time period. *Id.* at 242, 109 S.Ct. 2893. The second way that continuity may be established is when there is a "*threat* of continuity." *Id.*

"Closed-ended continuity" occurs when a defendant committed "a series of related predicates extending over a substantial period of time." *Jackson v. Bellsouth Telecommunications, Inc.*, 181 F.Supp.2d 1345, 1359 (S.D.Fla.2001) (emphasis in original) (quoting *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893). In *Jackson,* the court discussed both "closed and open-ended continuity." *Id.* at 1358–61. The plaintiffs, in *Jackson,* alleged that the defendants worked together to defraud the plaintiffs out of money from a settlement by convincing the plaintiffs to sign an agreement that released one of the defendants from liability in return for a monetary settlement. *Id.* at 1352–53. The plaintiffs alleged that the amount of money that the plaintiffs received in signing the agreement was less than the actual value of their claims. *Id.* Among the claims asserted by the plaintiffs in this case include allegations that the defendants violated the RICO statute under § 1962(b)–(d). *Id.* at 1351. The "predicate acts" alleged by the plaintiffs involved mail and wire fraud. *Id.* at 1358. After the court found the defendants had committed the necessary "predicate acts" to establish a "pattern of racketeering activity," the court discussed whether or not the "predi-

cate acts" committed by the defendants met the continuity requirement. *Id.* at 1358. The court, first discussed "closed-ended continuity." *Id.* The plaintiffs attempted to argue that a period just more than five months was enough to establish "closed-ended continuity." *Id.* The court held that a period just over five months was not long enough to establish "closed-ended continuity." *Id.* The court supported its decision by citing to the Supreme Court's holding that "predicate acts" that lasted over a few weeks or months but that did not threaten any future criminal conduct would not be enough to meet "closed-ended continuity." *Id.* at 1359 (quoting *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. 2893). The court found further support in the Eleventh Circuit by citing to *Aldridge v. Lily Tulip. Id.* at 1359. The court in *Aldridge* held that a period of six months was not long enough to qualify as a pattern of racketeering activity. *Id.* *See Delfrate v. Letts,* 1996 WL 420880 at *8–9 (M.D.Fla. Mar, 25, 1996) (this Court found that nine months was not long enough to establish "closed-ended continuity").

The *Jackson* court then discussed "open-ended continuity." *Id.* The Supreme Court has said that this can be met by either proving that there is a future threat of repetition of the illegal "predicate acts" or that the criminal acts are the defendant's way of regularly conducting business. *Id.* at 1359–60. The plaintiffs attempted to argue that the "predicate acts" committed by the defendants raised a continuous threat of criminal conduct in the future. *Id.* at 1360. However, the court disagreed with the plaintiff's argument. *Id.* The court found that the threat of future criminal conduct asserted by the plaintiffs did not deal with the "predicate acts" of mail and wire fraud. *Id.* The court found that the plaintiffs needed to assert that there was a future threat that

the defendants would continue to commit mail and wire fraud. *Id.*

■ This Court cannot find either "closed-ended or open-ended continuity" in the Plaintiff's complaint. The Plaintiff has failed to allege "closed-ended continuity" because the alleged "predicate acts" asserted by the Plaintiff took place in too short a time period. Here, the alleged "predicate acts" committed by the Defendants took place beginning in July of 2001 and ending in October of 2001. Therefore, the alleged "predicate acts" were committed within a three month time period. Applying the reasoning found in *Jackson*, where a five month time period was deemed insufficient to support "closed-ended continuity," the three month time period set forth by the Plaintiff is no where close to meeting the amount of time necessary for "closed-ended continuity." Therefore, the alleged "predicate acts," even if committed by the Defendant, were valid, they were not committed in a sufficient time period to establish "closed-ended continuity."

The Court also cannot find "open-ended continuity." As mentioned earlier, both parties failed to discuss this element for establishing a "pattern of racketeering activity" in their memorandums. The Court has found nothing in the Plaintiff's complaint in which it can infer that there is a threat of repetition of the illegal "predicate acts" by the Defendants in the future. Reading the complaint on its face, it appears to the Court that the actions of the Defendants were an isolated incident. It appears that the Plaintiff was the sole victim of the alleged scheme. It seems that the alleged scheme was a one time incident which targeted a sole victim, the Plaintiff.

Also, the Plaintiff has not alleged that the illegal acts are part of the Defendant's regular way of doing business. There is no indication that there are other incidents where the Defendants have conducted themselves in the same manner. The Plaintiff has offered no prior examples of how this factors in with Defendants regular business practices. The Plaintiff has not asserted or offered proof that the Defendants treated other clients in the same or similar manner.

Therefore, this Court finds that the Plaintiff has failed to establish a "pattern of racketeering activity" because it has failed to establish the necessary "predicate acts" for a RICO cause of action. The Court further finds that even if the Plaintiff had established the necessary "predicate acts" its complaint would still be dismissed because the Plaintiff has failed to establish that the "predicate acts" illustrate a continuing nature of criminal activity. Accordingly, the Plaintiff is granted leave to amend its complaint, to attempt to properly establish the "predicate acts" necessary to state a cause of action under RICO and to show that the "predicate acts" illustrate continuity of future criminal activity if it can do so in good faith.

### The Economic Loss Rule

The Defendants also argue that under the economic loss rule Counts II–VI of the Plaintiff's complaint should be dismissed. These Counts involve conspiracy to commit conversion, negligent misrepresentation, and Federal RICO claims respectively. The Plaintiff argues that Counts II–VI of its complaint should not be dismissed because the economic loss rule does not apply to these Counts.

■ The birth of the economic loss rule is usually credited to the Florida Supreme Court's decision in *Florida Power & Light Co. v. Westinghouse Elec. Corp.*, 510 S.2d 899 (Fla.1987). In that decision, the Florida Supreme Court ruled that economic loss was better resolved using contract

principles rather than tort principles when there is no physical injury or property damage. *Id.* at 902. The idea behind this rule is that parties should protect themselves during contract negotiations. *Id.* at 901. The Florida Supreme Court found that parties have the ability to protect themselves in contract negotiations because they have the ability to anticipate any potential problems and then bargain over warranty provisions, prices, and insurance. *Id.* at 902. The Florida Supreme Court found this to be a better remedy then having the parties attempt to recover under tort law after they had already suffered a loss. *Id.* In *AFM Corp. v. Southern Bell Telephone and Telephone Co.*, the Florida Supreme Court expanded the economic loss rule to service contracts. 515 So.2d 180, 181 (Fla.1987). In that decision, the Florida Supreme Court barred negligence claims for a breach of service agreement. The Florida Supreme Court has also found that a breach of a contract claim does not subject a tort claim to the economic loss rule as long as the tort claim is independent of the breach of contract. *HTP, Ltd. v. Lineas Aereas Costarricenses,* 685 So.2d 1238, 1239 (Fla. 1996).

In its memorandum, the Plaintiff argues that there was never a contract between the Defendants and CSIR. Because there was no contract, the Plaintiff claims that the economic loss rule does not apply. This Court disagrees. Even though there is no written contract, this Court finds that there is evidence of an oral agreement between the parties. Here, the Defendants agreed to secure an insurance policy for the Plaintiff in return for $100,000.00. The Plaintiff accepted this offer as evidenced by the Plaintiff wiring the $100,000.00 to the Defendants bank account. When the Defendants requested an additional $100,000.00, to secure the insurance policy, the Plaintiff again complied by wiring the requested sum. Therefore, the Court finds that there was an oral agreement between the parties and that this is sufficient to apply the economic loss rule.

■ Having established that there was an agreement between the parties, the Court now turns to whether or not Count II should be dismissed. In Count II, the Plaintiff alleges conspiracy to commit conversion. This Court finds that this claim is not barred by the economic loss rule. In support of this decision, the Court relies on *Burke v. Napieracz,* 674 S.2d 756 (Fla. 1st DCA 1996). In *Burke,* the court found that the parties had two oral agreements. *Id.* at 757. In the first oral agreement, the defendant agreed to pay a mortgage on the plaintiff's house. *Id.* In the second oral agreement the defendant agreed to deposit the plaintiff's monthly social security check into the plaintiff's checking account and then forward money to the plaintiff when she requested it. *Id.* at 757–58. The defendant never fulfilled either agreement. *Id.* at 758. The plaintiff brought a conversion cause of action against the defendant for the second agreement. *Id.* In its decision the court referred to past case law which had determined that a cause of action for a tort that is independent from breach of contract is not barred by the economic loss rule. *Id.* Using this reasoning, the court decided that the conversion claim was independent from any breach of contract. *Id.* The court found that under the contract the defendant was to deposit the plaintiff's checks and then forward the funds when requested. *Id.* The court found that under a breach of the agreement the defendant would have simply failed to perform. *Id.* That is, under a breach of contract the defendant would have either failed to deposit the checks and/or forward the funds when requested. *Id.* However, the court found that under the conversion claim the

defendant did more than fail to perform the contract. *Id.* Instead, the defendant converted the funds for his own use by stealing them. *Id.* The court decided that in converting the money, for his own use, the defendant committed an "affirmative and intentional act." *Id.* Based on this, the court concluded that the plaintiff's cause of action for conversion was not barred by the economic loss rule. *Id.* at 758–59.

Using the reasoning found in *Burke,* this Court finds that Count II of the Plaintiff's claim is not barred by the economic loss rule. Here, the Plaintiff reached an oral agreement with the Defendants whereby the Plaintiff paid $200,000.00 to the Defendants who in return agreed to secure the requested insurance policy. Instead, the Defendants failed to secure the policy. When the Plaintiff requested the Defendants return the $200,000.00, the Defendants failed to do so. Applying the reasoning used by the *Burke* court, this Court finds that the Defendants failure to secure the insurance policy is a breach of the agreement. That is, the Defendants failed to perform their part of the agreement. However, the Defendants, like the defendant from *Burke,* did more than fail to perform. This Court finds that the Plaintiff's assertion that the Defendants converted the $200,000.00 for their own use is independent from the oral agreement. Instead, the Court finds that there is evidence before it that Defendants committed an "affirmative and intentional act" in converting the Plaintiff's money for their own use. Therefore, this Court finds that the economic loss rule does not bar the Plaintiff's conversion claim because it is a tort that is independent from a contract claim.

The Plaintiff also argues that Counts II and IV–VI should not be dismissed because the economic loss rule does not bar statutory causes of actions. In support of this assertion the Plaintiff cites to the Florida Supreme Court decision in *Comptech Intern. v. Milam Commerce Park, Ltd.,* 753 S.2d 1219 (Fla.1999). This Court disagrees with the Plaintiff's interpretation of the *Comptech* decision. In this decision, the Florida Supreme Court found that the economic loss rule should not be applied to statutory causes of actions. *Id.* at 1226. However, this is only when the Legislature has made it clear, within the statute, that it wants a remedy made available to a party in spite of whether or not there is another cause of action available. *Id.*

The statutory causes of actions alleged by the Plaintiff does not meet with the specifics of the ruling set forth by the Florida Supreme Court in *Comptech.* The statute alleged in Count II of the Plaintiff's complaint is Florida's civil theft statute, § 772.11. This statute differs from those statutes examined by the Florida Supreme Court in *Comptech.* In that case, the Florida Supreme Court was looking at Fla.Stat. §§ 624.155, 501.213, and 553.84. *Id.* In each of these statutes there is an express provision that says a remedy will be available whether or not another cause of action may be available. This Court finds no such language within Fla. Stat. § 772.11 or within 18 U.S.C.1962. No where within § 772.11 or § 1962 is there language stating that a remedy should be available despite another cause of action may be available. Therefore, this Court finds that the *Comptech* decision does not apply to this case.

The Court now turns to the Defendants arguments that the RICO claims in Counts IV–VI should be dismissed under the economic loss rule. For support of its argument the Defendants cite to *Sarkis v. Pafford Oil Co., Inc.,* 697 So.2d 524 (Fla.1st DCA 1997) and *Alafaya Square Assc., Ltd. v. Great Western Bank,* 706 S.2d 39 (Fla. 5th DCA 1998). Both of

these cases come from different circuits in the Florida Courts of Appeal and both held that the economic loss rule barred RICO claims because the tort claims asserted could be recovered under contract law. However, the Plaintiff points the Court in the direction of two Eleventh Circuit Opinions. In its memorandum the, Plaintiff argues that even if the Court finds that their was a contract then the economic loss rule would not apply to the RICO claims under *All Care Nursing Services, Inc. v. High Tech Staffing*, 135 F.3d 740, 745 (11th Cir.1998), and *Arabian American Oil Co. v. Scarfone*, 939 F.2d 1472, 1478 (11th Cir.1991). In *Arabian American Oil*, the defendant attempted to argue that the plaintiff's RICO claims should be dismissed. *Id.* The defendant's basis for its argument was that Florida law only allowed recovery under a breach of contract claim when the conduct forms both a breach of contract and a tort claim. The court rejected this argument as to the federal RICO claims. The court stated that federal law defines the defenses and elements for a federal cause of action. *Id.* (quoting *Howlett v. Rose*, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990)). The court's opinion from *All Care Nursing* is consistent with this point. 135 F.3d at 745. Citing to the opinion from *Arabian American Oil*, the court held that the defendants could not avoid liability from federal RICO claims by arguing the economic loss rule. The Defendants have not cited any federal case law which opposes this line of reasoning found within the Eleventh Circuit. This Court is bound to follow the law handed down from the Eleventh Circuit. Therefore, this Court agrees with the Plaintiff and finds that the RICO claims are not barred by the economic loss rule.

In their memorandums, the Defendants also include Count III (Negligent Misrepresentation) in their laundry list of Counts that should be dismissed under the economic loss rule. However, neither party makes any attempt to argue for nor against the dismissal of Count III in their memorandums. Therefore, this Court declines to address this issue. Furthermore, Defendants assert footnotes in their memorandums addressing that Count II and Count IV should also be dismissed. The Court declines to address these issues as well. Accordingly, it is

**ORDERED** that the motions to dismiss Counts I, II, IV, V, and VI (Dkts. 3 and 9) be **GRANTED** in part and **DENIED** in part and Plaintiff shall have ten (10) days from the date of this Order to file its amended complaint within the guidelines of this order.